**In re FRIEDMAN'S EXPRESS, INC., Debtor.**

**FRIEDMAN'S EXPRESS, INC., Plaintiff,**

v.

**REYNOLDS FASTENERS, INC., Defendant.**

**FRIEDMAN'S EXPRESS, INC., Plaintiff,**

v.

**HULS AMERICA, INC., Defendant.**

**FRIEDMAN'S EXPRESS, INC., Plaintiff,**

v.

**PENNSYLVANIA POWER & LIGHT COMPANY, Defendant.**

**FRIEDMAN'S EXPRESS, INC., Plaintiff,**

v.

**J & J FLOCK PRODUCTS, INC., Defendant.**

**FRIEDMAN'S EXPRESS, INC., Plaintiff,**

v.

**BMW OF NORTH AMERICA, INC., Defendant.**

Bankruptcy No. 93–21066T.
Adv. Nos. 95–2370, 95–2174, 95–2212, 95–2148 and 95–2318.

United States Bankruptcy Court, E.D. Pennsylvania.

July 27, 1995.

Joseph L. Steinfeld, Jr., Shawn, Mann & Niedermayer, L.L.P., Washington, DC, John T. Carroll, III, Swartz, Cambell & Detweiler, Philadelphia, PA, for plaintiff.

James E. Howard, Kirkpatrick & Lockhart, Boston, MA, for defendant Reynolds.

Paul H. Lamboley, Grove, Jaskiewicz and Cobert, Washington, DC, for defendants Huls, J & J Flock, BMW, and PP & L.

Augustus C. Martin, Office of Gen. Counsel, Pennsylvania Power & Light Co., Allentown, PA, for defendant PP & L.

## *OPINION*

THOMAS M. TWARDOWSKI,
Bankruptcy Judge.

Before the court are defendants' motions for more definite statement filed pursuant to Rule 12(e) of the Federal Rules of Civil Procedure, which is made applicable to adversary proceedings in bankruptcy cases by Rule 7012 of the Bankruptcy Rules. Defendants assert that the complaints are so vague and ambiguous that it is unreasonable to require them to file responsive pleadings. In particular, defendants maintain that the complaints are defective in that: *(1)* plaintiff failed to identify and exclude claims which may be barred by the United States Supreme Court's recent decision in *ICC v. Transcon Lines*, —— U.S. ——, 115 S.Ct. 689, 130 L.Ed.2d 562 (1995); *(2)* plaintiff failed to adequately identify the nature and basis of claims which may be eligible for resolution under the provisions of the Negotiated Rates Act of 1993 ("NRA"), P.L. 103–180, 107 Stat. 2044 (Dec. 3, 1993); and *(3)* plaintiff failed to identify the nature and basis of state law claims which may be barred from federal adjudication by the abstention doctrine. In addition, defendant Reynolds alleges that the complaint contra-

dicts previous demands for payment made by plaintiff prior to the filing of the complaint. Because each of the motions filed by defendants arises out of nearly identical fact patterns and allege similar defects in plaintiff's complaints, this opinion will serve as the basis of adjudication for all of the listed adversary proceedings.

■ A Rule 12(e) motion for more definite statement is appropriate when a pleading is wholly uninformative as to the basis for the claim. *Schwartz v. Kursman (In re Harry Levin, Inc.)* 175 B.R. 560, 565 (Bankr. E.D.Pa.1994). In this instance, while it is true that the complaints may lack detail, they are not so unintelligible that defendants cannot frame responsive pleadings. As we noted in *Hamilton Bank v. Fidelity Electric Co., Inc. (In re Fidelity Electric Co., Inc.)* 19 B.R. 531, 532 (Bankr.E.D.Pa.1982), a complaint filed in bankruptcy court, like all other pleadings filed in federal court, is merely a notice pleading whose function is to provide the opposing party with a general indication of the type of litigation involved. Given this, and the fact the Rule 12(e) motions are generally disfavored in light of liberal federal discovery rules, *In re American Int'l Airways, Inc.*, 66 B.R. 642, 645 (Bankr.E.D.Pa. 1986), we shall deny defendants' motions. We begin our analysis with a summary of the relevant facts.

Prior to filing this Chapter 11 petition on April 6, 1993, plaintiff operated as a motor carrier in interstate commerce pursuant to authority issued by the Interstate Commerce Commission ("ICC"), and in intrastate commerce pursuant to authority issued by various state regulatory agencies. In July of 1993, plaintiff engaged the services of Trans–Allied Audit Company ("Trans–Allied") to conduct an audit of plaintiff's freight bills to determine whether they had been properly rated according to the tariffs filed by plaintiff with the ICC and the various state regulatory agencies. The audit determined that defendants allegedly owed various amounts to plaintiff for freight which had been transported, and as a result, Trans–Allied billed defendants for these amounts. When subsequent negotiations failed to recover these

alleged balances, plaintiff filed these adversary complaints against defendants seeking to recover the difference between the amounts defendants allegedly should have paid for the transport of freight according to the tariffs on file with the ICC and the various state regulatory agencies (the "filed rate") and the amounts defendants actually paid plaintiff (the "negotiated rate"). These differences, customarily referred to as "freight undercharges," generally are recoverable under the "filed rate" doctrine notwithstanding any prior negotiated rate agreement. *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990).

It is important to note, however, that the ruling in *Maislin,* allowing complete recovery of all freight undercharges, has been modified by the subsequent passage of the NRA, particularly, for purposes of this proceeding, 49 U.S.C. 10701(f). In addition, the United States Supreme Court recently held in *ICC v. Transcon Lines,* — U.S. at — —, 115 S.Ct. at 694–95, that the "filed rate" doctrine does not bar the ICC from enjoining a trustee from collecting liquidated damages found in a filed tariff when it is shown that the carrier violated the ICC's credit regulations. The NRA, enacted to provide shippers with some relief from undercharge litigation, and the decision in *Transcon Lines* are both integral parts of defendants' motions for more definite statement and warrant further discussion.

Defendants first argue that the complaints fail to identify and exclude claims which defendants assert are barred by *Transcon Lines.* For purposes of these motions, we need not decide whether *Transcon Lines* effectively renders some or all of plaintiff's claims unrecoverable.[1] Rather, we need only decide whether the complaint is so vague and ambiguous that defendants are unable to evaluate whether *Transcon Lines* might be applicable to these cases. To this end, we find that the complaints, when examined along with the Exhibits attached thereto, are sufficiently specific to make defendants aware that plaintiff is seeking recovery of freight undercharges. To explain, the complaints allege, in paragraph 10, that:

> [a]s part of its freight audit service, Trans–Allied audited all of the shipments handled by Friedman's for Defendant by comparing ... declared value of each shipment to the applicable tariff rates and rules provisions Friedman's had on file with the ICC and/or various state regulatory agencies that were effective at the date of the shipment. The result of said audit was the creation of balance due original invoices in the amount of ... A copy of the statement of account evidencing the debt is attached hereto as Exhibit A.

By indicating that Trans–Allied compared the rates plaintiff had on file with the ICC and the various state regulatory agencies with those rates actually charged to defendants (and by attaching Exhibits "A"), we find that the complaints adequately place defendants on notice that plaintiff is seeking recovery for freight undercharges. This satisfies Fed.R.Civ.P.Rule 8(a), made applicable to these proceedings by B.R. 7008, which requires "only a short and plain statement of the claim showing that the pleader is entitled to relief" and, as such, gives defendants adequate notice as to the nature of the claims against them. Whether some or all of these claims are barred by *Transcon Lines* is an issue which can be addressed in defendants' responsive pleadings and subsequent discov-

---

1. In fact, the United States Supreme Court left open the question of whether a shipper may use the carrier's violation of ICC credit regulations as a defense to a collection action instituted by the carrier. Specifically, the United States Supreme Court stated:

> [i]n short, whether or not we would allow shippers to defend against a carrier's collection action by relying on the carrier's violation of credit regulations, it follows from *Commercial Metals* and our construction of the controlling statute that the ICC has the authority and

the discretion to determine appropriate remedies for these violations. Where, as here, the remedy involves a 'federal-court injunction requiring a carrier to comply with the regulations' [citation omitted]; constitutes a reasonable and necessary means to effect enforcement of the ICC's credit regulations; and protects the intended beneficiaries of the violated regulations, we believe the injunction is authorized under the [Interstate Commerce] Act.

*Transcon Lines,* — U.S. at —, 115 S.Ct. at 695.

ery. Consequently, we find that this aspect of defendants' motions must fail.

Defendants next argue that plaintiff's complaints are defective because they fail to adequately identify the nature and basis of the claims. Defendants allege that this lack of detail poses a significant problem in these cases due to the provisions in the NRA, specifically 49 U.S.C. § 10701(f), which allow for dispute resolution upon timely election by defendants. In the cases before us, defendants must make their election within sixty days from the date the answers are filed to the complaints. Defendants allege that the vague nature of the complaints prevents them from taking advantage of the dispute resolution remedies available under the NRA and that obtaining the detail needed through discovery is an unsatisfactory solution because the sixty day election period may expire before discovery is complete. For the reasons that follow, we do not agree with defendants' arguments.

By enacting the NRA, Congress sought to severely curtail the undercharge litigation that had become rampant as increasing numbers of carriers filed for bankruptcy protection in an increasingly competitive, deregulated industry. As a result, § 10701 of the NRA provides shippers with some protection from undercharge recovery by allowing shippers to settle these undercharge claims for a small portion of what would be recovered if strict adherence to the "filed rate" doctrine was applied. In particular, § 10701(f)(2), (3), and (4) provide shippers with a formula from which they may elect to settle undercharge claims. Subsection (2) addresses shipments weighing under 10,000 pounds and allows shippers to satisfy these claims for "twenty percent of the difference between the applicable and effective rate and that which was originally billed." Subsection (3) differs only in that it applies to those shipments weighing over 10,000 pounds and allows shippers to satisfy these claims for fifteen percent of the difference. Finally, subsection (4) allows shippers who qualify as "public warehouseman" to satisfy claims for five percent of the

difference notwithstanding subsections (2) and (3).

Shippers have the option of electing these remedies within the period set forth in § 10701(f)(8)(B). As mentioned earlier, in these cases, that time period is sixty days following the filing of the answers to the complaint. Failure to elect any of the remedies afforded under subsections (2), (3), and (4) does not automatically subject the shipper full payment of the undercharge claim. Instead, the shipper may pursue all rights and remedies available under Title 49.

In the cases before us, plaintiff attached an exhibit, identified as "Exhibit "A," to each of the complaints. This Exhibit identifies, by bill of lading number and date, the shipments which plaintiff alleges apply to each undercharge claim. While this information admittedly lacks detail, it is sufficient to satisfy plaintiff's duty to file a complaint which complies with Fed.R.Civ.P. 8(a) and (e) and does not place an unreasonable burden upon defendants to evaluate and subsequently elect remedies available to them. Since plaintiff identified all of the shipments in issue by bill of lading number, defendants should be able to categorize the shipments by weight. Once the shipments are so categorized, defendants can compute the amount which would satisfy the claims under the dispute resolution provisions of the NRA. Because this task is one which we feel can reasonably be completed within sixty days of the filing of defendants' answers, we deny this aspect of defendants' motions as well.

We next address defendants' argument that plaintiff's complaints are defective because they fail to identify and exclude state law claims which may be barred by the abstention doctrine. Once again, we find this argument unpersuasive. First, we note that we do not find that these alleged deficiencies prevent defendants from filing responsive pleadings. Second, we note that at this point in the proceedings, we need not decide the abstention issue.[2] Rather, if, after filing their answers, defendants identify claims

---

2. In fact, the abstention issue is not before us at this time because no motions to abstain have

been filed in these cases.

which they believe warrant abstention, they can file the appropriate motions at that time.

Finally, defendant Reynolds argues that plaintiff's complaint contradicts earlier demands for payment. To support this argument, Reynolds points to a series of letters which it received from plaintiff outlining the amounts allegedly owed and the various settlement options available. Reynolds received the first letter prior to the United States Supreme Court's ruling in *Transcon Lines*. The second letter, received after the *Transcon Lines* decision, indicated that adjustments were made and that the amount claimed to be due was modified based on *Transcon Lines*. Reynolds relies on the amounts claimed to be due in these two letters and the fact that they were characterized as "late payment penalties" in the first letter but seemingly recharacterized as "other underlying tariff issues" in the second letter to argue that plaintiff recharacterized the amounts claimed to be due in an attempt to avoid application of the *Transcon Lines* decision. We disagree. First, while plaintiff's complaint does not specifically identify the "other underlying tariff issues," it is consistent with the second (post-*Transcon*) letter in that the amount sought in the complaint is nearly identical to the amount sought in the second letter. Second, Reynolds will have the opportunity to identify the "other underlying tariff issues" through the discovery process. If, after discovery is complete, Reynolds still finds fault with plaintiff's complaint and concludes that it violates *Transcon Lines*,[3] Reynolds can file an appropriate motion at that time. As we find that the complaint is not so unintelligible or lacking in detail that Reynolds is not able to frame a responsive pleading, we reject this final argument raised by Reynolds in support of its motion for more definite statement.

For all of the foregoing reasons, defendants' motions for more definite statement are denied. An appropriate order follows.

**3.** Once again, we note that the United States Supreme Court's decision in *Transcon Lines* leaves open the question of whether a shipper may defend a carrier's collection action by rely-

## ORDER

AND NOW, this 27th day of July, 1995, it is ORDERED that defendants' motions for more definite statement are DENIED.

IT IS FURTHER ORDERED that defendants shall file responsive pleadings to the complaints within thirty (30) days of the date of this Order.

ing on the carrier's violation of credit regulations. *Transcon Lines,* —— U.S. at ——, 115 S.Ct. at 695.