**In re APF CO., et al., Debtors.**

**Joseph A. Pardo, Trustee of FPA Creditor Trust, and Plan Administrator for APF Co., et al., Plaintiffs,**

**v.**

**Pacificare of Texas, Inc., Pacificare of Arizona, Inc., Pacificare of Nevada, Inc. and Pacificare of California, a California corporation, Defendants.**

**Bankruptcy No. 98–1596 PJW.
Adversary No. 00–848.**

United States Bankruptcy Court, D. Delaware.

June 27, 2001.

Seth J. Reidenberg, White and Williams, Wilmington, DE, Karl E. Block, Jean Morris, Paul A. Blechner, Greenberg Glusker Fields Claman & Machtinger LLP, Los Angeles, CA, for defendants Pacificare of Texas, Inc., Pacificare of Arizona, Inc., Pacificare of Nevada, Inc., and Pacificare of California.

Dennis J. O'Grady, Joseph L. Schwartz, Riker, Danzig, Scherer, Hyland & Perretti LLP, Morristown, NJ, Neil B. Glassman, Jeffrey M. Schlerf, Elio Battista, Jr., The Bayard Firm, Wilmington, DE, co-counsel for co-plaintiff, Joseph A. Pardo, Trustee of FPA Creditor Trust.

John Wm. Butler, Jr., J. Eric Ivester, J. Gregory St. Clair, Skadden, Arps, Slate, Meagher & Flom (Illinois), Chicago, IL, Gregg M. Galardi, Skadden, Arps, Slate, Meagher & Flom LLP, Wilmington, DE, for co-plaintiff, Plan Administrator for APF Co., et al.

## MEMORANDUM OPINION

PETER J. WALSH, Chief Judge.

Before the Court are two motions by the defendants, Pacificare of Texas, Inc., Pacificare of Arizona, Inc., Pacificare of Nevada, Inc., and Pacificare of California (collectively, "Pacificare"). The first (Doc. # 4) is a Motion to Dismiss for Lack of Standing [F.R.C.P. 12(b)(1) ] and Failure to State a Claim Upon Which Relief Can Be Granted [F.R.C.P. 12(b)(6) ], or, Alternatively, for a More Definite Statement [F.R.C.P. 12(e) ]. The second (Doc. # 7) is a Motion to Compel Arbitration and Stay Adversary Proceeding Pending Arbitration. I will deny both motions for the reasons discussed below.

### Background

This dispute concerns medical management contracts between the debtors, APF Co. and its affiliates ("APF" or "Debtors") and Pacificare, a health maintenance organization ("HMO"). Before filing for voluntary chapter 11 relief in mid-July 1998, APF was a national physician practice management company.[1] APF's contracts with Pacificare required APF to make medical services available to enrollees of the Pacificare HMO. In return, Pacificare paid APF a monthly capitation fee. The contracts required APF to pay medical service providers directly. Pacificare began reducing the capitation payments when APF's financial difficulties prevented APF from making direct payments to the medical service providers.

The plaintiffs in this proceeding are the Trustee of the FPA Creditor Trust ("Trustee") and the Plan Administrator of APF's confirmed chapter 11 plan ("Plan Administrator"). Plaintiffs' complaint (Doc. # 1) ("Complaint") seeks recovery of the withheld capitation payments. As to each defendant, Plaintiffs request an accounting of missing payments; turnover of property of the estate under § 542;[2] avoidance of invalid prepetition setoffs under §§ 553(b) and 550; avoidance of preferential transfers under §§ 547 and 550; and avoidance of unauthorized postpetition transfers of property of the estate under §§ 549 and 550. Plaintiffs also allege Pacificare willfully violated the automatic stay and is liable for compensatory and

---

1. APF Co. was formerly known as FPA Medical Management.

2. Unless otherwise indicated, all references to "§ _____" herein are to a section of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

punitive damages under § 362(h) and § 105(a).

In lieu of an answer, Pacificare filed the pending motions seeking alternatively dismissal for lack of standing under Fed. R.Civ.P. 12(b)(1)[3], failure to state a claim under Fed.R.Civ.P. 12(b)(6), or abstention in favor of arbitration.

## DISCUSSION

### I. Standing

■ Pacificare argues that Plaintiffs fail to allege a sufficient legal basis for individual standing. Dismissal is appropriate in such circumstances because a court lacks subject matter jurisdiction if a party lacks standing as there is no case or controversy, or injury in fact, upon which relief can be granted. *Burlington Motor Carriers v. MCI Telecommunications (In re Burlington Motor Holdings)*, 231 B.R. 874, 878 (Bankr.D.Del.1999) *citing Fair Hous. Council of Suburban Philadelphia v. Montgomery Newspapers*, 141 F.3d 71, 74 (3d Cir.1998).

According to Pacificare, the Trustee and Plan Administrator cannot jointly assert *each* count because they do not both have standing to pursue *all* counts. Thus, for example, the Trustee may only plead those counts for which the Trustee, and only the Trustee, has standing. Pacificare maintains that doing otherwise renders the Complaint fatally contradictory and ambiguous. I disagree.

■ The legal character of Pacificare's withholdings from APF's capitation payments is not yet determined. The possibility that some recoveries may prove mutually exclusive, however, does not prevent the Trustee or Plan Administrator from pleading all legal theories under which either or both may be entitled to recovery. Fed.R.Civ.P. 8(e)(2) ("... A party may also state as many separate claims ... as the party has regardless of consistency ...").

■ I find the Complaint adequately states grounds for Plaintiffs' standing. It identifies the Trustee and Plan Administrator as individuals authorized to act pursuant to APF's confirmed chapter 11 plan ("Plan"). As to the Trustee, the Complaint alleges that a trust ("Trust") was created and established for the benefit of APF's unsecured creditors and that the Trust's Advisory Board designated the Trustee as successor trustee of the Trust which the Trustee acknowledged and accepted on July 20, 1999. Complaint at ¶¶ 17–19. As to the Plan Administrator, the Complaint identifies him as an individual appointed under APF's ˙confirmed chapter 11 plan to administer the rights, remedies, obligations and liabilities imposed on the Debtors and Reorganized FPA not assigned to the Trust. *Id.* at ¶ 20.

Regarding the Trustee claims, the Complaint alleges APF transferred certain assets to the Trust, including "Trust Claims," pursuant to Article XI, § 11.2 of the Plan, "Trust Claims" include "Avoidance Claims" as defined in the Plan, Article I, § 1.126, which the Plan further defines to include "Causes of Action against Persons arising under sections ... 542 ... 547 ... through 551 and 553 of the Bankruptcy Code, or under similar state or federal statutes ..." Complaint at ¶¶ 40–42. The Complaint then alleges that "[s]ome or all of the funds withheld, reduced and/or set off by Pacificare from payments otherwise due to the Debtors, both pre- and postpetition, fall within the

---

**3.** Fed.R.Bank.P. 7012 makes Fed.R.Civ.P. 12 applicable to adversary proceedings in bankruptcy.

definition of 'Trust Claims' under the Plan and are recoverable by the Trustee." *Id.* at ¶ 43.

As to the Plan Administrator's claims, the Complaint states that Article VII of the Plan authorizes the Plan Administrator to liquidate "Rights of Action" which include "Causes of Action ... for recovery in respect of the Debtors' accounts receivable or other receivables or rights to payment created or arising in the ordinary course of the Debtors' business, including, without limitation, withheld capitation payments ..." Complaint at ¶ 44. Plaintiffs aver certain funds Pacificare withheld from the capitation payments are "Rights of Action" and thus recoverable by the Plan Administrator. Complaint at ¶ 45.

The Complaint also alleges legal authority for Plaintiffs' standing. Section 1123(b)(3) allows a chapter 11 plan to provide for

(A) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or

(B) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest[.]

11 U.S.C. § 1123(b).

 Thus, a party who is neither the debtor nor the trustee but who seeks to enforce a claim must establish (1) that it has been appointed, and (2) that it is a representative of the estate. *Retail Mktg. Co. v. King (In re Mako, Inc.)*, 985 F.2d 1052, 1054 (10th Cir.1993); *Citicorp Acceptance Co. v. Robison (In re Sweetwater)*, 884 F.2d 1323, 1327–28 (10th Cir.1989); *see also McFarland v. Leyh (In re Texas Gen. Petroleum Corp.)*, 52 F.3d 1330, 1335 (5th Cir.1995).

The first element requires that the court approve the appointed party, as for example, through plan confirmation. *Sweetwater*, 884 F.2d at 1326. The second element generally requires a court to decide "whether a successful recovery by the appointed representative would benefit the debtor's estate and particularly, the debtor's unsecured creditors." *Id.* at 1327.

As detailed above, Plaintiffs plead an adequate factual premise for standing under § 1123(b). The Complaint sets forth how the Trustee and Plan Administrator were appointed, pursuant to which Plan provision, and that both are estate representatives. I therefore hold that dismissal under Rule 12(b)(1) is not warranted.

## II. Rule 12(b)(6).

 Pacificare next moves to dismiss all Counts for failure to state a claim upon which relief can be granted. A Fed. R.Civ.P. 12(b)(6) motion serves to test the sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993); *Loftus v. Southeastern Pennsylvania Transp. Auth.*, 843 F.Supp. 981, 984 (E.D.Pa.1994). When deciding such a motion, I accept as true all allegations in the complaint and all reasonable inferences drawn from it which I consider in a light most favorable to the plaintiffs. *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir.1997); *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989).

 I should not grant a Rule 12(b)(6) motion "unless it appears beyond doubt that [plaintiffs] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). I need not, however, "credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse*, 132 F.3d at 906 (citations omitted).

## A. Prepetition Setoffs Under § 553(b).

Pacificare moves to dismiss the Third, Sixth, Ninth and Twelfth Counts of the Complaint which seek avoidance and recovery of allegedly invalid prepetition setoffs under § 553(b). According to Pacificare, the Complaint is defective in two regards. First, Pacificare maintains the Complaint impermissibly alleges conduct that is mutually exclusive and thus cannot be stated conjunctively, i.e., the Complaint cannot aver that Pacificare "withheld, reduced and/or setoff funds." Defendants' Opening Brief in Support of Motion to Dismiss (Doc. # 5) ("Def. Op. Brief to Dismiss") at 16–17. The Complaint may only allege that Pacificare *either* withheld, reduced or setoff funds because if Pacificare "reduced" capitation fees as permitted under the contracts then Pacificare could not have "setoff" the payments nor could it have "withheld" the payments. From this, Pacificare concludes that Plaintiffs are left with a mere breach of contract claim which states no set of facts for recovery under § 553(b).

Second, Pacificare argues its contractual rights entitle it to setoff payments to medical providers from capitation fees and that the Complaint therefor fails to state a claim for which relief can be granted. Both arguments lack merit for purposes of dismissal under Fed.R.Civ.P. 12(b)(6).

■ The Federal Rules do not require that a complaint set forth facts with such specificity so as to constitute a complete cause of action. *Schaedler v. Reading Eagle Publ'n, Inc.*, 370 F.2d 795, 798 (3d Cir.1967). Plaintiffs need only give Pacificare fair notice of the nature of the claims asserted. *Id.* I find that the complaint meets this standard. The legal characterization of Pacificare's conduct, i.e., whether it withheld, setoff or reduced funds, goes to the merits of the Complaint, not its sufficiency.

Pacificare's second reason for dismissal is similarly flawed. It incorrectly argues a possible basis for prevailing on the merits—an alleged contractual right to setoff capitation payments—with a proper basis for dismissal.

■ Pacificare's contractual rights to setoff, if any, are limited in bankruptcy by § 553. "[S]ection 553(a) recognizes and preserves rights of set off where four conditions exist: (1) the creditor holds a 'claim' against the debtor that arose before the commencement of the case; (2) the creditor owes a 'debt' to the debtor that also arose before the commencement of the case; (3) the claim and debt are 'mutual'; and (4) the claim and debt are each valid and enforceable." *St. Francis Physician Network, Inc. v. Rush Prudential HMO, Inc. (In re St. Francis Physician Network)*, 213 B.R. 710, 715 (Bankr. N.D.Ill.1997) *quoting* LAWRENCE P. KING ET AL., 5 COLLIER ON BANKRUPTCY, ¶ 553.01 (15th Ed.Rev.)

Specifically, § 553(b) states:

(b)(1) . . . if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—

(A) 90 days before the date of the filing of the petition; and

(B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

(2) In this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.

11 U.S.C. § 553(b).

 Plaintiffs essentially plead two grounds for relief: (1) Pacificare had no right of setoff in the first place, and (2) to the extent Pacificare had a contractual right of setoff, Plaintiffs may avoid and recover any § 553(b) insufficiency. They allege the following facts:

Each of the Pacificare defendants entered into prepetition contracts with APF. Complaint at ¶¶ 25–28. Most of these contracts are "full capitation" agreements which obligated Pacificare to pay APF a fixed sum, i.e., the contracts give rise to a debt owing to the Debtors. Complaint at ¶ 29. Pacificare–Arizona failed to remit $3,380,014 due APF from April to July 1998. Complaint at ¶ 65. Pacificare–Texas failed to remit $1,557,975 due under the contracts to APF from June to July 1998. Complaint at ¶ 76. Pacificare–Nevada failed to remit $4,808,566 due under the contracts to APF from April to June 1998. Complaint at ¶ 87. Pacificare–California likewise failed to remit payments due under the contracts to APF. Complaint at ¶ 98.

Plaintiffs assert the amounts due APF are property of the Debtors' estate. Complaint at ¶¶ 67, 78, 89, 101. The amounts each Pacificare defendant failed to remit far exceeds the amount of each defendant's claim against APF on the later of (a) 90 days before the Filing Date, and (b) the first date during the 90 days immediately preceding the Filing Date on which there was an insufficiency. Complaint at ¶¶ 70, 81, 92, 104.

These allegations establish a colorable claim under § 553(b) and dismissal is not appropriate. *Kozakiewicz,* 1 F.3d at 183;

*Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.").

**B. Avoidance under § 542.**

Pacificare moves to dismiss the Second, Fifth, Eighth and Eleventh Counts for failure to state a claim for turnover of the capitation payments. Section 542 provides in relevant part:

(b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

11 U.S.C. § 542(b).

Relying on similar reasoning as it did under § 553(b), Pacificare moves to dismiss because it argues Plaintiffs cannot plead both a setoff and a turnover for the same conduct. In other words, Pacificare argues if it engaged in a § 553 setoff as alleged, then as a matter of law, Plaintiffs have no claim for "turnover" under § 542. The plain language of the statute and the standard under Fed.R.Civ.P. 12(b)(6) are to the contrary.

 First, § 542 only prohibits turnover of setoffs "to the extent" the setoff is valid under § 553. Thus, on its face the section is not exclusive. Section 542 permits recovery of any "setoff" that does not come within § 553. It also contemplates recovery of any "insufficiency" arising under a valid § 553 setoff. *See* 11 U.S.C. § 553(b). The statute does not prohibit Plaintiffs from seeking setoff pay-

ments from Defendants within the meaning of § 553(b) which they may also recover, at least in part, under § 542.

 More importantly, however, Plaintiffs may plead alternate and inconsistent theories of relief. Fed.R.Civ.P. 8(a)(3). They may characterize Pacificare's conduct regarding the capitation payments as a "withholding, setoff and/or reduction" without subjecting the complaint to dismissal under Rule 12(b)(6). Pacificare has fair notice of the basis of Plaintiffs' cause of action. That Plaintiffs phrase the Complaint using "may have been setoffs" instead of asserting that there "were" setoffs is a semantic technicality that does not warrant dismissal under the Federal Rules' liberal pleading standards. *See Schaedler*, 370 F.2d at 798 ("The Rules require that averments in pleadings 'shall be simple, concise, and direct,' and they exclude any requirement of 'technical forms of pleading' . . .").

 Pacificare also argues that Plaintiffs fail to plead turnover under § 542 because the claims are not fully matured and payable on demand. *E.g., Charter Crude Oil Co. v. Exxon, USA (In re Charter Co.)*, 913 F.2d 1575, 1579 (11th Cir. 1990); *Chick Smith Ford, Inc. v. Ford Motor Credit Co. (In re Chick Smith Ford)*, 46 B.R. 515, 518 (Bankr.M.D.Fla. 1985) *Satelco, Inc. v. North Am. Publishers (In re Satelco, Inc.)*, 58 B.R. 781, 786 (Bankr.N.D.Tex.1986). Pacificare, however, does not give a reason why the capitation fees are not fully matured other than to assert its contractual right to setoff as a defense to payment. It does not otherwise dispute its liability for the capitation fees under the contracts. That a party owing an account may assert a valid defense to payment of the debt is contemplated in § 542(b) and does not require a holding that the debt is not matured.

 Given the complexity of the contractual relationships at issue and the absence of any evidence either by way of affidavit or copies of the relevant contracts, I cannot determine at this time whether the claims fall within the scope of § 542. Consequently, Plaintiffs' are entitled to submit evidence to establish that the withheld capitation fees are mature and payable on demand. *See Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686 ("Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test [for dismissal under Rule 12(b)(6)].").

 Pacificare's naked assertion that the withheld funds are not property of the Debtors' estate is similarly flawed. In bankruptcy, applicable state or federal substantive law determines the nature and extent of a debtor's interest in property. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). Federal bankruptcy law dictates the extent that interest is property of the debtor's estate once the court determines the nature of the debtor's interest therein. *Id.*

Pacificare has not submitted copies of the relevant contracts nor provided any other evidentiary basis on which to conclude Plaintiffs do not have a legal or equitable interest in the withheld capitation fees. Nor does Pacificare provide any legal basis, beyond its mere assertion, on which to conclude that Debtors do not have a § 541 property interest in the withheld payments as a matter of law. Plaintiffs are accordingly entitled to offer evidence to establish the Debtors' interest, if any, in the withheld capitation fees. Dismissal under Fed.R.Civ.P. 12(b)(6) is not appropriate.

## C. Preferential Transfers under § 547.

Pacificare moves to dismiss the Fourth, Seventh, Tenth and Thirteenth Counts of

the Complaint which seek avoidance and recovery of the withheld capitation fees as preferential transfers. It argues that set-offs cannot be preferences as a matter of law and that consequently, the Complaint fails to state a claim for which relief can be granted because the Complaint alleges both. The argument is incorrect.

 Section 547(b) provides that a debtor may avoid and proceed to recover any transfer made by the debtor to a creditor within 90 days before filing for bankruptcy that enables the creditor to receive more in the bankruptcy than it would have received had the transfer not been made. *Durham v. SMI Indus., Corp.*, 882 F.2d 881, 882 (4th Cir.1989); *Glenshaw Glass Co. v. Ontario Grape Growers Mktg. Bd. (In re Keystone Foods, Inc.)*, 145 B.R. 502, 508 (Bankr.W.D.Pa. 1992). Section 553(b) protects an otherwise preferential setoff excluding any insufficiency. *SMI Indus.*, 882 F.2d at 882. Consequently, when a party asserts a prepetition setoff as a defense to a preference action, the court must first determine whether the setoff is valid under § 553. *Id.* The court applies § 547 if it finds the setoff invalid or if it finds no right of setoff in bankruptcy. *SMI Indus.*, 882 F.2d at 882; *Keystone Foods*, 145 B.R. at 507 (improper setoff may constitute preference).

 It is clear from this analysis that Plaintiffs may allege both a § 553(b) insufficiency and a § 547(b) preference. To prevail under § 547(b), Plaintiffs must establish that:

(1) an interest of the Debtors was transferred;

(2) the transfer was made to or for the benefit of Pacificare;

(3) the transfer was because of an antecedent debt owed by the Debtors before the transfer was made;

(4) the Debtors were insolvent at the time of the transfer;

(5) the transfer occurred within ninety days before the bankruptcy petition was filed; and

(6) the transfer permitted Pacificare to receive more than it would have received upon liquidation of the Debtors under the Code.

11 U.S.C. § 547(b); *Keystone Foods*, 145 B.R. at 508.

As to each defendant, Plaintiffs claim that Pacificare was obligated to pay Debtors a fixed sum pursuant to the prepetition contracts. Complaint ¶¶ 21–29. Plaintiffs claim the contractual rights to payment are property of the Debtors' estate (Complaint at ¶¶ 67, 78, 89, 101) which Pacificare transferred prepetition for its own benefit on account of an antecedent debt to medical service providers for which both Pacificare and APF were liable. Complaint at ¶ 36. Plaintiffs contend Pacificare made these payments within 90 days of Debtors' bankruptcy filing (Complaint at ¶ 36) when Debtors were insolvent (Complaint at ¶¶ 73(c), 84(c), 95(c), 107(c)) and that Pacificare received more on account of the transfers than it would have had the Debtor been liquidated under Chapter 7. Complaint at ¶¶ 73, 84, 95, 107.

These allegations suffice to withstand a Rule 12(b)(6) motion. The existence of a possible defense under § 553 does not render the pleading subject to dismissal.

### D. Violation of the Automatic Stay.

Pacificare moves to dismiss the Fourteenth Count of the Complaint that alleges Pacificare willfully violated the automatic stay by withholding capitation fees postpetition without court approval. Pacificare repeats its prior argument that Plaintiffs fail to allege facts establishing the existence of a setoff, including a postpetition setoff, and consequently fail to establish a

violation of § 362. Pacificare also argues that § 362(h) by its plain language is only available to individuals and that I consequently lack authority to assess damages under § 105(a).

Section 362 prohibits any act by a creditor to collect or recover on a prepetition claim. *United States v. Nicolet, Inc.*, 857 F.2d 202, 207 (3d Cir.1988). The automatic stay is a fundamental debtor protection that "gives the debtor a breathing spell from his creditors. *It stops all collection efforts, all harassment, and all foreclosure actions.* It permits a debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." *Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065, 1074 (3d Cir.1992) *quoting In re Schwartz*, 954 F.2d 569, 571 (9th Cir.1992) (emphasis in the original).

Once a creditor has notice of a bankruptcy filing, it should cease its postpetition collection activities and restore the status quo. *Dubin v. Jakobowski (In re Stephen W. Grosse, P.C.)*, 68 B.R. 847, 850 (Bankr.E.D.Pa.1987). This duty is particularly clear where as here, a standing court order expressly prohibits Pacificare and like creditors from withholding and offsetting any monthly capitation payments due to the Debtors "related to any unpaid prepetition claims of the Physicians or otherwise and from paying the Physicians directly with respect to such claims." Order Prohibiting Certain Payors from Withholding and Offsetting Payments Due Debtors (Doc. # 47). The failure of the creditor or its attorney to abide by the obligations imposed by orders of this court or by the requirements of § 362(a) may entitle Plaintiffs to provable compensatory damages. *In re Stephen W. Grosse, P.C.*, 68 B.R. at 851 *citing In re Carter*, 691 F.2d 390 (8th Cir.1982); *see also Borg–*

*Warner Acceptance Corp. v. Hall*, 685 F.2d 1306 (11th Cir.1982).

Plaintiffs allege that: Pacificare had knowledge of APF's bankruptcy since July 1998. Complaint at ¶ 16. On July 21, 1998, this Court entered an order prohibiting Pacificare and similar creditors from withholding and offsetting payments due APF or from paying medical service providers directly on account of prepetition claims ("Payor Order"). Complaint at ¶¶ 30–31. Pacificare received a copy of this order. Complaint at ¶ 33. Pacificare nevertheless withheld, reduced and/or setoff funds postpetition from the capitation and other payments due Debtors without obtaining court approval. Complaint at 110 – 113. Plaintiffs suffered damages from Pacificare's failure to remit these payments and failure to comply with the Court order and § 362(a). Complaint at § 115. I find Plaintiffs adequately plead a cause of action under § 362(a).

I am also not persuaded by Pacificare's final argument that the Supreme Court's "plain meaning" approach to statutory construction has implicitly overruled Third Circuit precedent holding that § 362(h) applies to corporate debtors. Def.Op. Brief to Dismiss at 26–27 *citing Union Bank v. Wolas*, 502 U.S. 151, 156, 112 S.Ct. 527, 530, 116 L.Ed.2d 514 (1991) ("Given the clarity of the statutory text, respondent's burden of persuading us that Congress intended to create or to preserve a special rule [under § 547(c)(2)] for long-term debt is exceptionally heavy.") *and Toibb v. Radloff*, 501 U.S. 157, 164–66, 111 S.Ct. 2197, 2201–02, 115 L.Ed.2d 145 (1991) (that Congress may not have foreseen all consequences of a statutory enactment is not sufficient reason for refusing to give effect to its plain meaning).

Although § 362(h) refers to "individuals," the Court of Appeals for the

Third Circuit has followed the Fourth Circuit in holding that § 362(h) applies to corporate entities as well as natural persons. *Cuffee v. Atlantic Business and Community Dev. Corp. (In re Atlantic Business and Community Corp.),* 901 F.2d 325, 329 (3d Cir.1990) ("Although Section 362(h) refers to an individual, the section has uniformly been held to be applicable to a corporate debtor") *citing Budget Service Co. v. Better Homes of Va.,* 804 F.2d 289, 292 (4th Cir.1986). The Court of Appeals for the Fourth Circuit reasoned that:

> [Section] 362(h) must be read in conjunction with the rest of § 362 ... [so] that its sanctions are not limited to the relief of an "individual" in the literal sense. The Bankruptcy Code does not define the word individual ... [I]t seems unlikely that Congress meant to give a remedy only to individual debtors against those who willfully violate the automatic stay provisions of the Code as opposed to debtors which are corporations or other like entities. Such a narrow construction of the term would defeat much of the purpose of the section, and we construe the word "individual" to include a corporate debtor.

> *Better Homes,* 804 F.2d at 292.

Other courts have criticized this approach. *E.g., Johnston Envtl. Corp. v. Knight (In re Goodman),* 991 F.2d 613, 619 (9th Cir .1993) (rejecting Fourth and Third Circuit's analysis as inconsistent with principles of statutory construction and holding that individual does not include a corporation or other artificial entity); *Maritime Asbestosis Legal Clinic v. LTV Steel Co., Inc. (In re Chateaugay Corp.),* 920 F.2d 183, 185–86 (2d Cir.1990) (rejecting application of § 362(h) to corporate debtors but noting "there is substantial authority permitting just such application and awarding damages to corporate debtors, including decisions in the only other two circuit courts to address the issue"); *see also Sosne v. Reinert & Duree, P.C. (In re Just Brakes Corp. Sys.),* 108 F.3d 881, 884 (8th Cir.1997) (affirming bankruptcy court holding that § 362(h) applies only to individuals) *cert. denied* 522 U.S. 947, 118 S.Ct. 364 (1997).

The Supreme Court has not yet resolved the split of authority under § 362(h) and *Atlantic Business* is still binding law in this Circuit. Consequently, I conclude that Plaintiffs' Fourteenth Count states a colorable claim for relief. In this regard, I note that even if § 362(h) proves unavailable to corporate debtors, the court can arguably fashion appropriate relief under § 105(a) to recover the Debtors' compensatory damages resulting from Pacificare's withholding of capitation payments in violation of § 362(a).

### E. Avoidance of Unauthorized Postpetition Transfers.

Pacificare moves to dismiss the Fifteenth Count of the Complaint seeking recovery of postpetition withholdings under § 549. Pacificare again argues that Plaintiffs fail to properly plead the existence of either a pre- or postpetition avoidable setoff, and that I should accordingly dismiss the Count.

At the outset, I note that § 553(b) does not impact § 549. The latter relates to unauthorized postpetition transfers whereas the former is limited to prepetition transfers. Thus, Plaintiffs have a valid claim under § 549(a) to the extent Pacificare's withholding of capitation fees postpetition is an unauthorized transfer of property of the Debtors' estate despite Pacificare's rights, if any, to reduce prepetition capitation fees under § 553.

Section 549(a) permits Plaintiffs to avoid a transfer of property of the

estate that occurs after the commencement of the case and that is not authorized under the Bankruptcy Code or by the court. 11 U.S.C. § 549(a). Thus, to avoid Pacificare's postpetition transfers, Plaintiffs must prove (1) that property of the estate (2) was transferred (3) after the filing of a petition and that such transfer (4) was not authorized by the Code or the Court. 11 U.S.C. § 549(a); *e.g., Gibson v. United States (In re Russell)*, 927 F.2d 413, 417–18 (8th Cir.1991) (applying elements); *Moratzka v. Visa U.S.A. (In re Calstar, Inc.)*, 159 B.R. 247, 252 (Bankr. D.Minn.1993); *Geekie v. Watson (In re Watson)*, 65 B.R. 9, 11 (Bankr.C.D.Ill. 1986).

The Complaint alleges that Pacificare engaged in unauthorized postpetition transfers of property of the Debtors estate by reducing capitation fees due APF postpetition without court authorization. Complaint at ¶¶ 118 – 122. These allegations plead a valid claim under § 549(a) and suffice to withstand dismissal under Rule 12(b)(6).

### F. Accounting.

Pacificare moves to dismiss the First Count of the Complaint that seeks to enforce a prior court order requiring Pacificare and similar payors to provide detailed itemizations and summaries of all funds withheld, reduced or setoff. Pacificare argues dismissal is appropriate because (1) it has already provided the requested information and (2) the Count is procedurally defective in that it tries to compel compliance with a court order through an adversary proceeding rather than by motion practice.

■ Both arguments provide no basis for dismissal. Pacificare's alleged compliance with the order is not germane for deciding whether the complaint states a cause of action for which relief can be granted. Pacificare's purported compliance with the order does not address the sufficiency of the pleading nor does Pacificare provide a legal predicate for holding the Count is otherwise moot.

■ I also find Pacificare's argument that the claim is procedurally defective wanting. This Count is an integral component of a 122–paragraph Complaint. The Complaint requests relief under a variety of Code provisions that require an adversary proceeding under Fed.R.Bank.P. 7001. It would be an exercise in judicial inefficiency to have Plaintiffs excise this Count and continue on a parallel track via motion practice simply to comply with an unsubstantiated technical requirement that provides reduced procedural protection for the Defendants. *Accord In re Little*, 220 B.R. 13, 17 (Bankr.D.N.J.1998) ("[M]ost courts are willing to overlook deficiencies in a pleading, including errors in presenting a complaint as a motion and vice versa, so long as the pleading substantially complies with the rules of pleading."). Pacificare has not demonstrated prejudice or inequity and I hold the request for an accounting provides fair notice of the pending litigation.

### III. Motion for a More Definite Statement under Rule 12(e).

■ Pacificare moves for a more definite statement of all Counts. "Rule 12(e) authorizes a motion for a more definite statement if the complaint is 'so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading.'" *Schaedler*, 370 F.2d at 797. A complaint, however, "need only contain … 'a short and plain statement of the claim showing that the pleader is entitled to relief, and … a demand for judgment for the relief to which he deems himself entitled.' (Rule 8(a)(2) and (3)). There is no requirement to state facts sufficient to

constitute a cause of action." *Id.* at 798. The function of the complaint is to afford fair notice to the adversary of the nature and basis of the claim asserted and a general indication of the type of litigation involved. *Id.*

As set forth in detail above, I find the Complaint is not ambiguous. It provides fair notice of the nature and basis of each claim asserted and a general indication of the type of litigation involved. I reject Pacificare's argument that Plaintiffs' use of "withheld, setoff and/or reduced" creates an ambiguity such that Pacificare is unable to frame a meaningful response. The apparent purpose of this language is to characterize Pacificare's conduct in a broad manner so as to avoid limiting recovery to only one legal outcome, e.g., a statutorily defined setoff under § 553.

It seems to me that most of the alleged deficiencies in the Complaint of which Pacificare complains are factual and may be resolved through discovery. Consequently, I deny Pacificare's motion for a more definite statement as to all Counts.

## IV. Motion to Compel Arbitration.

Pacificare moves to stay this adversary proceeding pending arbitration since the parties' contracts contain arbitration clauses that it claims must be enforced under the Federal Arbitration Act ("FAA"). Plaintiffs counter by first noting that many of the relevant contracts do not contain arbitration clauses nor have many of the contracts been located. The Plaintiffs also insist their claims are not subject to mandatory arbitration because they are core proceedings under 28 U.S.C. § 157(b), i.e., avoidance claims for improper setoffs, preferences, turnover of estate property, improper postpetition transfers and damages for violations of the automatic stay.

 Section 3 of the FAA provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

9 U.S.C. § 3.

The Supreme Court has interpreted the FAA as establishing a federal policy favoring arbitration which requires

enforcement of agreements to arbitrate statutory claims. Like any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command. The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue. If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent will be deducible from the statute's text or legislative history, or from an inherent conflict between arbitration and the statute's underlying purposes.

*Shearson/American Exp. v. McMahon*, 482 U.S. 220, 226–27, 107 S.Ct. 2332, 2337–38, 96 L.Ed.2d 185 (1987) (internal citations omitted) (holding claims under the Securities Exchange Act of 1934 and the federal RICO statute arbitrable and subject to the FAA).

 As applied to bankruptcy proceedings, the Third Circuit has interpreted this holding to mean that if the underlying proceeding involves a debtor-derivative, non-core matter then the bankruptcy court does not have the authority to deny en-

forcement of the arbitration clause. *Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149, 1155–57 (3d Cir.1989); *see also Crysen/Montenay Energy v. Shell Oil Co.,* 226 F.3d 160, 165–66 (2d Cir.2000) *cert. denied,* —— U.S. ——, 121 S.Ct. 1356, 149 L.Ed.2d 286 (2001); *Ins. Co. of North Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.),* 118 F.3d 1056, 1066–68 (5th Cir.1997).

■ Although *Hays* did not expressly address whether a bankruptcy court has discretion to enforce an applicable arbitration clause where core bankruptcy issues are at stake, the majority view in this Circuit and others is that bankruptcy courts continue to enjoy discretion to refuse enforcement of an otherwise applicable arbitration provision provided the standard in *McMahon*[4] has been met. *E.g., Nat'l Gypsum,* 118 F.3d at 1067; *Selcke v. New England Ins. Co.,* 995 F.2d 688, 691 (7th Cir.1993) ("Even broadly worded arbitration clauses are assumed not to extend to claims that arise out of the provisions of the bankruptcy law itself ...."); *Am. Freight Sys. v. Consumer Prod. Assocs. (In re Am. Freight Sys., Inc.),* 164 B.R. 341, 347 (D.Kan.1994) ("The teachings of *Hays & Co.* are not applicable to an adversary proceeding involving a core matter."); *In re Spectrum Info. Techs., Inc.,* 183 B.R. 360, 363 (Bankr.E.D.N.Y.1995) ("[E]specially with respect to core proceedings, ... arbitration should not triumph over the specific jurisdiction bestowed upon the bankruptcy courts under the Bankruptcy Code") (citing cases); *Sacred Heart Hosp. of Norristown v. Indep. Blue Cross (In re Sacred Heart Hosp. of Norristown),* 181 B.R. 195, 202 (Bankr.E.D.Pa.1995) ("[A]s

to core proceedings, this court may exercise its full panoply of discretion ... in determining whether to refer a proceeding before it to arbitration"); *In re Glen Eagle Square, Inc.,* 1991 WL 71782 *1 (Bankr. E.D.Pa. May 1, 1991) (court retains discretion to order arbitration of core proceedings because "they impact upon the Debtor's relationship with its entire body of creditors"); *In re Day,* 208 B.R. 358, 369 (Bankr.E.D.Pa.1997) (bankruptcy courts retain enhanced discretion to deny enforcement of arbitration clauses in core proceedings); *Weinstock v. Frank, Frank & Cohen (In re Weinstock),* 1999 WL 342764 *8 (Bankr.E.D.Pa. May 25, 1999) ("Whether it is appropriate that core matters be heard in the forum of an arbitration proceeding requires a balancing of the provisions and policies of the two federal statutes."); *In re United Co. Fin. Corp.,* 241 B.R. 521, 525 (Bankr.D.Del.1999) ("Of course ... with respect to core matters, the Bankruptcy Court has exclusive jurisdiction which may not be delegated or supplanted by alternative dispute resolution procedures.").

Pacificare rejects the core/non-core distinction for purposes of deciding whether I should stay the present adversary proceeding. Defendants' Memorandum of Law in Reply to Plaintiffs' Opposition (Doc. # 16) ("Def. Reply Brief") at 3–6. It argues that "an arbitration agreement should be enforced, unless and only unless a particular bankruptcy proceeding meets the standard for non-enforcement ... set forth in *McMahon* ... i.e., that enforcing the arbitration agreement would seriously jeopardize the Bankruptcy Code. As it is clear that 'core' proceedings do not automatically meet that standard, the core /

---

4. The Supreme Court applied the *McMahon* standard two years later in a case addressing arbitrability of securities fraud claims under the Securities Act of 1933. *See Rodriguez de* *Quijas v. Shearson/American Exp., Inc.,* 490 U.S. 477, 485–86, 109 S.Ct. 1917, 1922, 104 L.Ed.2d 526 (1989) (holding claims under the Securities Act of 1933 arbitrable).

non-core distinction suggested by Plaintiffs should be rejected." Def. Reply Brief at 5.

Pacificare argues the arbitration agreements should be enforced here because Plaintiffs' claims are "derivative" of the Debtors' rights under the prepetition contracts and therefore, under *Hays*, as a matter of law they cannot "seriously jeopardize" Bankruptcy Code objectives. Def. Reply Brief at 5; Defendants' Opening Brief in Support of Motion to Compel Arbitration and Stay Adversary Proceeding Pending Arbitration (Doc. # 8) at 13. It concludes the claims are derivative based on the confirmed chapter 11 plan which assigns the claims to the Trustee and Plan Administrator.

■■■ Pacificare's argument misconstrues the nature of a derivative claim as articulated in *Hays*. It is not enough that the party asserting the claim is a third party transferee. As used in *Hays*, a derivative claim is one that derives from property of the debtor's estate as defined in § 541, including nonbankruptcy choses in action and claims by the debtor against others. *Hays*, 885 F.2d at 1155 and n. 7. Where the trustee brings an action as successor to the debtor's interest under § 541, the terms of an arbitration clause bind the trustee to the same extent as the debtor because in this context the "trustee stands in the shoes of the debtor," i.e., the trustee can only assert those causes of action possessed by the debtor and is subject to the same defenses, including a valid arbitration provision, as could have been asserted against the debtor. *Hays*, 885 F.2d at 1154.

■ However, where the trustee brings a cause of action on behalf of creditors which the Bankruptcy Code itself authorizes the trustee to assert on the creditors' behalf, the cause of action derives from the Bankruptcy Code, *not* from the debtor. *Hays*, 885 F.2d at 1155, Consequently, these claims are not subject to mandatory arbitration because the parties on whose behalf the trustee is acting, i.e., the creditors, are not a party to the arbitration agreement and are thus not bound by its terms. *Id.* ("[T]here is no justification for binding creditors to an arbitration clause with respect to claims that are not derivative from one who was a party to it."); *accord Allegaert v. Perot*, 548 F.2d 432, 436 (2d Cir.1977) (with respect to the trustee's statutory claims, such as fraudulent and preferential transfers, "[t]hese are statutory causes of action belonging to the trustee, not to the bankrupt, and the trustee asserts them for the benefit of the bankrupt's creditors, whose rights the trustee enforces.").

■■ Pacificare's conclusion that I must stay the adversary pending arbitration because Plaintiffs' are assignees of the Debtors' causes of action under the confirmed plan is therefore not correct. The assignment of the claims to Plaintiffs in the confirmed Plan does not render the claims "derivative" under *Hays* such that I must compel arbitration. For a number of reasons, I will exercise my discretion and deny enforcement of the arbitration agreements at this time.

First, as Pacificare admits, not all of the contracts have an arbitration clause. Indeed, the parties have not even located some of the contracts. Thus, it seems the motion to arbitrate is premature in that it seeks to stay the entire adversary proceeding based on an alternative dispute resolution process that will affect only some underlying agreements, if any.

I am also not convinced that the fragmentation of this adversary proceeding based on the individual contracts is in the best interests of either party, particularly where the fragmentation is based on an

arbitration clause not common to all contracts. Given the bankruptcy rights underlying Plaintiffs' claims, resolution of the issues as they relate to one contract will presumably effect resolution of the same issues as to the remaining contracts. Arbitrarily staying the adversary proceeding to resolve only those claims which are based on contracts that happen to contain arbitration clauses will result in piecemeal litigation and unnecessary expense for both parties. I fail to see how doing so promotes the policies of the FAA nor has Pacificare suggested any benefits to arbitration under the circumstances.

Furthermore, unlike the situation in *Hays* which involved a trustee seeking to enforce a claim inherited from the debtor in an adversary proceeding in a district court, staying the subject adversary proceeding in favor of arbitration seriously jeopardizes Bankruptcy Code objectives. Of primary concern is the preservation of the Debtors' estate by not requiring Plaintiffs to expend limited resources and energies pursuing similar cases in several geographically diverse fora. Doing so inherently conflicts with the fundamental tenet of centralized resolution of purely bankruptcy issues. No competing federal policy favors the use of arbitration provisions to sidestep a bankruptcy court's conventional jurisdiction.

It is one thing to force a trustee who has voluntarily commenced suit against a third party for the benefit of the estate on a claim inherited from the debtor to abide by the forum selection terms of the contract he is attempting to enforce. It is quite a different matter, however, to permit various creditors to bypass carefully established procedures ... to force an unwilling debtor to litigate a number of actions in a number of forums merely because those creditors' contracts happen to include a standard arbitration clause. In such a world, the

mere cost of defending these various suits could deplete the corpus of substantial funds.

*In re FRG*, 115 B.R. 72, 75 (E.D.Pa. 1990).

Finally, enforcing the arbitration clauses here also disrupts equality of distribution, another fundamental bankruptcy policy. "It is inequitable since it would give any aggrieved party who could cite to an arbitration clause in its contract an exalted status over all other creditors. This would occur even though the other creditors were not privy to the underlying contract and reaped no benefit from the contractual bargain." *In re FRG*, 115 B.R. at 74.

I am mindful of the strong federal policy favoring arbitration. However, it seems to me that particularly in a case such as this, where the parties have not commenced or requested arbitration outside of bankruptcy, this court is the most efficient and effective forum in which to resolve these fundamental Bankruptcy Code issues. The efficient resolution of claims and the conservation of the bankruptcy estate assets is an integral purpose of bankruptcy and inures to the benefit of the Debtors' creditors. *Nat'l Gypsum*, 118 F.3d at 1069 n. 21. This policy concerns more than the mere private rights of individuals to an arbitration agreement which was the preeminent concern of Congress in passing the FAA. *See, e.g., Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 220, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985)

In this regard it seems to me that efficiency concerns in the bankruptcy context, at least as they pertain to fundamental bankruptcy rights such as the ones here, may present a genuine conflict between the FAA and the Bankruptcy Code. *See Nat'l Gypsum*, 118 F.3d at 1069 n. 21. Accordingly, I will exercise my discretion as permitted under *Hays* and deny Pacifi-

care's motion to stay the adversary proceeding pending at this time. I will deny the motion without prejudice in the event arbitration becomes appropriate.

## CONCLUSION

For the reasons set forth above, I deny Pacificare's motion to dismiss for lack of standing and failure to state a claim upon which relief can be granted. I also deny, but without prejudice, Pacificare's motion to stay the adversary proceeding pending compelled arbitration.