**In re GWI, INC., et al., Debtor.**

**SFC New Holdings, Inc., Plaintiff,**

**v.**

**The Earthgrains Company, The Bank of New York, Defendants.**

**Bankruptcy Nos. 00–3647(MFW) to 00–3654(MFW). Adversary No. 01–768(MFW).**

United States Bankruptcy Court, D. Delaware.

Aug. 15, 2001.

Mark S. Chehi, David R. Hurst, Grenville R. Day, Skadden Arps Slate Meagher & Flom, LLP, Wilmington, DE, Jay M. Goffman, George A. Zimmerman, Skadden Arps Slate Meagher & Flom, LLP, New York City, for debtors.

Mark Minuti, Saul Ewing LLP, Wilmington, DE, John L. Hardiman, William L. Farris, Sullivan & Cromwell, New York City, for The Earthgrains Company.

Robert J. Kochenthal, The Bank of New York, Legal Department, New York City, for The Bank of New York.

### *MEMORANDUM OPINION* [1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is the Motion of the Defendant. The Earthgrains Company ("Earthgrains"), to stay this proceeding pending arbitration. Over the objection of SFC New Holdings, Inc.("SFC"), a reorganized debtor in this case, we grant Earthgrains' motion.

### I. *BACKGROUND*

On March 20, 2000, SFC entered into a Stock Purchase Agreement to sell its outstanding stock in Metz Baking Company to Earthgrains in exchange for $625 million ("the Purchase Agreement"). Section 9.13 of the Purchase Agreement provides:

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

the parties hereby agree that any action arising out of, in connection with, or relation to, this Agreement (or any other agreement contemplated by or related to, this Agreement) . . . shall be settled at the request of any party to this Agreement, exclusively by a final and binding arbitration. . . .

Contemporaneously, the parties also executed an escrow agreement in accordance with sections 5.12 and 8.5 of the Purchase Agreement ("the Escrow Agreement"). The Escrow Agreement provides that $20 million of the purchase price be held in escrow to cover "certain indemnification claims which [Earthgrains] may have against [SFC] pursuant to [the Purchase Agreement]." The Escrow Agreement further provides that, unless Earthgrains notifies the escrow agent of a claim, $10 million would be released to SFC from escrow on March 20, 2001, and the remaining funds would be released on March 20, 2002.

On August 15, 2000, Earthgrains notified SFC that it intended to exercise its rights of indemnification from the escrow account for SFC's alleged breaches of representations and warranties contained in the Agreement. Earthgrains subsequently notified SFC on September 28 and November 1, 2000, that it believed it had additional indemnification claims against SFC. On February 2, 2001, Earthgrains advised the escrow agent of claims in excess of $20 million. Consequently, the escrow agent has not made any distribution from the escrow fund.

On September 18, 2000, six months after closing on the Purchase Agreement and one month after Earthgrains first gave notice of its indemnification claims, SFC filed for relief under chapter 11 of the Bankruptcy Code. On November 2, 2000, SFC and its affiliates submitted a joint liquidating plan ("the Plan"), which was confirmed on December 11, 2000. Article V, section A of the Plan provides, *inter alia,* that on the Plan's effective date, the disbursing agent would "(ii) perform the obligations of the Debtors related to the [Escrow Agreement] under the [Purchase Agreement], in accordance with the terms and conditions thereof. . . ."

On March 30, 2001, SFC commenced this adversary action seeking a declaratory judgment that the escrow agent, the Bank of New York, is obligated to release $10 million from escrow to SFC. Earthgrains has, in response, filed a motion to stay the action pending arbitration. SFC opposes Earthgrains' motion.

## II. *DISCUSSION*

The issue before the Court is whether we must stay this adversary action pending arbitration, pursuant to section 3 of the Federal Arbitration Act (FAA), which provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, provided that the applicant for the stay is not in default in proceeding with such arbitration.

■ The Supreme Court has found that the FAA is a "congressional declaration of a liberal federal policy favoring arbitration agreements" which is applicable to any arbitration within the coverage of the Act. *Moses H. Cone Mem'l Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct.

927, 74 L.Ed.2d 765 (1983). Therefore, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 24–25, 103 S.Ct. 927.

■ The Third Circuit has held that courts have no discretion to deny the enforcement of an arbitration clause in a non-core bankruptcy proceeding. *Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1155–57 (3d Cir.1989). In so holding, the Court found that the Bankruptcy Code contains no text to suggest that arbitration clauses are unenforceable in non-core adversary proceedings. Nor did the Court find that the purposes of the Code would be offended if arbitration were compelled in a non-core matter. *Id.* at 1157.

SFC raises two arguments. First, this is a core proceeding; therefore, this Court has exclusive jurisdiction to determine this action, and the matter may not be decided by an arbitrator. Second, this case should not be referred to arbitration for policy reasons, including the effect of a delay in the collection and distribution process and the preference for resolving all related issues in a single forum. We reject both of these arguments.

### A. *The Bankruptcy Court's Exclusive Jurisdiction*

SFC asserts that because this is a core matter, it should be resolved by the bankruptcy court. It asserts that the liberal policy favoring arbitration is overridden by a countervailing policy favoring resolution of issues by the bankruptcy court where the action is a core bankruptcy proceeding. However, the policy favoring resolution of core issues by bankruptcy courts is not determinative. Even where a matter is

found to be a core proceeding,[2] courts have permitted arbitration.

■ Where a matter is a core proceeding, it is left to the bankruptcy court's discretion to decide whether to refer the matter to arbitration. *See, e.g., Insurance Co. of N. America v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re National Gypsum Co.)*, 118 F.3d 1056, 1067–68 (5th Cir.1997)(refusing to find the arbitration of core bankruptcy proceedings inherently irreconcilable with the Bankruptcy Code based solely on the jurisdictional nature of a bankruptcy proceeding); *Shugrue v. Air Line Pilots Assoc. Int'l. (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984 (2d Cir.1990)(holding that automatic stay provision did not preclude arbitration where collective bargaining agreement required the parties to arbitrate); *In re Sacred Heart Hosp.*, 181 B.R. 195, 202 (Bankr.E.D.Pa.1995)("as to core proceedings, this court may exercise its full panoply of discretion ... in determining whether to refer a proceeding before it to arbitration"). *See also In re Glen Eagle Square, Inc.*, 1991 WL 71782 (Bankr. E.D.Pa. May 1, 1991)(in exercising its discretion to order arbitration, court retained jurisdiction of core proceedings because "they impact upon the Debtor's relationship with its entire body of creditors").

■ In exercising our discretion to determine whether to allow this matter to proceed to arbitration, we find it significant that SFC has already ratified (post-petition) the arbitration provision. As noted above, the confirmed Plan expressly provided that the Purchase and Escrow Agreements would be performed in accordance with their terms, which include having all issues decided by arbitration.

**2.** We do not decide whether this is a core matter. Rather, we assume, for the purpose

of deciding this Motion, that it is core.

■ SFC focuses on the term of the Plan which provides that this Court retains exclusive jurisdiction over "all matters arising out of or related to the Chapter 11 case and the Plan, including jurisdiction to determine any and all adversary proceedings, motions, applications, and contested or litigated matters." However, SFC ignores the Plan provision which specifically adopts all of the terms of the Purchase and Escrow Agreements. Since the latter provision is more specific, it controls. *See, e.g., Gulf Oil Corp. v. Fed. Power Comm'n,* 563 F.2d 588, 601 (3d Cir.1977)("We must give effect to [the] specific provision rather than to the more general language"); *Capitol Bus Co. v. Blue Bird Coach Lines, Inc.,* 478 F.2d 556, 560 (3d Cir.1973)("while a contract's provisions must be interpreted with reference to the whole the specific controls the general").

■ By adopting the provisions of the Purchase Agreement in the confirmed Plan, SFC specifically agreed to the arbitration provisions. It is bound by that choice. Section 1141(a) states that "the provisions of a confirmed plan bind the debtor." *See also Donaldson v. Bernstein,* 104 F.3d 547, 554 (3d Cir.1997)("a confirmation order is res judicata as to all issues decided or which could have been decided at the hearing on confirmation.") *quoting In re Szostek,* 886 F.2d 1405, 1408 (3d Cir.1989) (internal quotes omitted).

The Federal Rules of Bankruptcy Procedure provide that parties may opt for arbitration even where this court has exclusive jurisdiction. Rule 9019 provides that "on stipulation of the parties to *any controversy* affecting the estate, the court may authorize the matter to be submitted to final and binding arbitration." Fed. R. of Bankr.Pro. 9019(c)(emphasis added). *See also In re Sargeant Farms, Inc.,* 224 B.R.

842, 845 (Bankr.M.D.Fla.1998)("Rule 16(c)(9) now makes more explicit the intent to allow the use of Alternative Dispute mechanisms" than before the 1993 amendments).[3] Therefore, since SFC has agreed in the terms of its confirmed Plan to resolve this dispute by arbitration, we conclude that we should permit the dispute to be decided by an arbitrator.

### B. *Bankruptcy Policy*

We also reject SFC's arguments that this action should not be referred to arbitration because of a general bankruptcy policy favoring resolution in the bankruptcy court. SFC asserts that arbitration would: (a) significantly delay the collection and distribution process; (b) frustrate the underlying policy that all issues pertaining to property of the estate be decided in a single forum; and (c) interfere with the important elementary bankruptcy function of claim allowance. While we acknowledge each of the policies outlined by SFC, we do not find that arbitration in this case would hinder any of those policies. In *Hays,* the Third Circuit found that general bankruptcy policies were "not substantial enough to override the policy favoring arbitration." *Hays,* 885 F.2d at 1157–1158.

There are significant countervailing policies favoring arbitration. Arbitration is quick and inexpensive. *See Rudolph v. Alamo Rent A Car,* 952 F.Supp. 311, 317 (E.D.Va.1997)("the presumption in favor of arbitration is not a mindless mantra repeated merely for the sake of consistency; instead, the presumption reflects courts' acknowledgment that the arbitral process often exceeds the judicial process in speed, efficiency, and inexpense [sic]"). *See also United Steelworkers of America v. Ideal Cement Co.,* 762 F.2d 837, 841 (10th Cir.

---

**3.** The local rules of bankruptcy procedure expressly provide for arbitration. *See* Del. Bankr.L.R. 7016–1(iv); Del. Bankr.L.R. 9019–2(iv).

1985); *Alascom, Inc. v. ITT N. Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir.1984).

 Although it is generally preferable to have all issues pertaining to property of the estate and claims against the estate decided in a single forum, that rule is not without exception. As a matter of law, the bankruptcy court may not hear all matters which affect the estate. *Hays*, 885 F.2d at 1159 and n. 13. For example, personal injury and wrongful death actions cannot be tried in the bankruptcy court. 28 U.S.C. § 157(b)(5). *See also*, 28 U.S.C. § 1334(c)(1), (2).

Finally, we find no basis in fact or law for the proposition that arbitration would interfere with the bankruptcy function of claim allowance. On the contrary, the vast majority of matters which are sent to arbitration are claim disputes. There is no evidence that permitting arbitration of claims is a threat to the bankruptcy process. Instead it often results in a quicker and more economic resolution of claims. We find no reason to conclude that this case will be any different from the myriad other cases which are regularly decided in arbitration.[4]

## III  *CONCLUSION*

For the foregoing reasons, we grant Earthgrains' Motion for stay pending arbitration.

### *ORDER*

AND NOW, this **15th** day of **AUGUST, 2001,** upon consideration of the Motion of The Earthgrains Company to Stay this Proceeding Pending Arbitration and SFC

New Holdings, Inc.'s Response in Opposition thereto, it is hereby

**ORDERED** that the motion of The Earthgrains Company is **GRANTED;** and it is further

**ORDERED** that this adversary is stayed pending arbitration in accordance with the terms of the Purchase and Escrow Agreements.

---

4. *Cf. Pardo v. Pacificare of Tex., Inc. (In re APF Co.)*, 264 B.R. 344 (Bankr.D.Del.2001), in which Judge Walsh concluded that arbitration would lead to piecemeal litigation resulting in unnecessary expense because, *inter alia,* the parties had entered into multiple contracts where some, but not all, had arbitration clauses. *Id.* at 364. This case is distinguishable from *Pardo* because here there are not multiple contracts or the possibility of piecemeal litigation in multiple forums.