In re AMERICAN INTERNATIONAL AIRWAYS, INC., Debtor.

Harry P. BEGIER, Jr., Trustee, Plaintiff,

v.

CLEVELAND PNEUMATIC, Defendant.

Bankruptcy No. 84–02379K.
Adv. No. 86–0957K.

United States Bankruptcy Court, E.D. Pennsylvania.

Nov. 3, 1986.

Marc N. Bell, Philadelphia, Pa., for trustee.

Clayton H. Thomas, Jr., Philadelphia, Pa., for defendant.

Harry P. Begier, Jr., Philadelphia, Pa., Trustee.

Pace Reich, Philadelphia, Pa., for debtor.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

This adversarial proceeding is one of over two hundred (200) actions instituted by the Trustee of the Debtor in this Chapter 11 bankruptcy case to recover funds allegedly transferred by the Debtor within the circumstances described in 11 U.S.C. § 547(b), which allows a Trustee to avoid "preferential transfers" by the Debtor. The particular transfer in issue here was allegedly made to "Cleveland Pneumatic" by the Debtor in the amount of $21,800.00 on or about June 5, 1984, clearly within the requisite 90–day period set forth in 11 U.S.C. § 547(b)(4), since the bankruptcy case was originally filed by the Debtor on August 19, 1984.

This proceeding was filed on August 15, 1986, and the Summons, issued on August 19, 1986, specified that a response was due on September 19, 1986, and that trial was scheduled on October 18, 1986. Our attention was initially drawn to this matter by correspondence to the Court from Marc N. Bell, Esquire, on behalf of the Trustee, and Clayton H. Thomas, Jr., Esquire, on behalf of the Defendant, in which Counsel indicated an inability to agree on a date by which the Defendant must respond to the Complaint in light of a series of requests for extensions by the Defendant. On September 30, 1986, the Court entered this fray and indicated to Mr. Thomas that he was accorded "an extension to answer the Complaint until October 8, 1986," adding that "we will hold the October 28, 1986, date for trial, and you should be prepared for trial on that date."

Instead of filing an answer to the Complaint, Mr. Thomas nevertheless proceeded to file what was termed a "Motion for Transfer of Adversary Proceeding and in the Alternative for a More Definite Statement," with an accompanying Memorandum of Law. The Trustee answered and briefed this Motion, which came before the Court on October 29, 1986, the parties having apparently agreed to a one-day extension beyond the October 28, 1986, listing.

As we pointed out to Mr. Thomas when the parties came before us on October 29, 1986, we did not believe that his filing adhered to the letter or spirit of the directive of our letter of September 30, 1986. We pointed out that we had granted an extension to "answer" the Complaint only,

and our emphasis that trial was to take place twenty (20) days after the "answer" was due certainly should have underscored our lack of receptivity to any procedural motions tending to delay disposition of this rather straightforward matter on the merits.

Moreover, on October 29, 1986, we compelled counsel in numerous other matters listed before the Court to wait while Mr. Thomas adduced what he promised would be "five minutes" of testimony relevant to his Motion, which consumed well in excess of a half hour on direct examination due principally to the failure of Mr. Thomas to limit his questioning to issues relevant to the Motion.

The principal substance of the Motion was a request for a change of venue, and the testimony adduced was from Albert C. Ruehmann, Esquire, corporate Counsel of Pneumo-Abex Corporation, the parent corporation of Cleveland Pneumatic Company, which was in turn the parent of a corporation known as Cleveland Pneumatic Products Services Division, Inc. (hereinafter "CPPSD"). The testimony of Mr. Ruehmann relevant to the Motion alleged that the Debtor had dealt only with CPPSD, in a transaction on or about June 1, 1986, in which $21,800.00 was billed and paid, and that CPPSD was a Florida corporation with its sole place of business in Miami, Florida. The fact that the Defendant's witness and records were in Florida, Defendant argued, justified a change of venue.

Although the Defendant, or its affiliate, had thus pinpointed what was obviously the transaction in issue, the Defendant continued to press the other aspect of its Motion pursuant to Bankruptcy Rule 7012 and Federal Rule of Civil Procedure 12(e), claiming that the identity of the transaction in the Complaint was "so vague or ambiguous that [it] cannot reasonably prepare a response."

We find that these Motions are patently without merit, confirming our suspicion that this filing was largely a dilatory tactic.

In support of the Motion challenging venue, the Defendant cited to 28 U.S.C. § 1475, which we note was repealed over two (2) years ago. It was, however, replaced with a comparable provision, 28 U.S.C. § 1412, which states as follows:

§ 1412 Change of Venue

A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.

In its Brief, the Defendant cited three (3) cases, two (2) of which were cases decided under the Bankruptcy Code, *In re Walbridge*, 51 B.R. 137 (Bankr.D.Mass.1985); and *In re Lionel Corp.*, 24 B.R. 141 (Bankr.S.D.N.Y.1982), and the other of which *L.F. Popell Co. v. Delta Airlines*, 323 F.2d 50 (2nd Cir.1983), was decided under the Bankruptcy Act, and, as indicated below, is clearly distinguishable. Both of the Code cases, reaching conclusions directly contrary to the position of the Defendant, establish the following principles:

A case brought under Title 11 may be transferred to a Bankruptcy Court for another district pursuant to 28 U.S.C. § 1475 when the transfer is "in the interest of justice and for the convenience of the parties." The burden of proof regarding the issue of change of venue is on the party requesting the transfer and such burden must be carried by a preponderance of the evidence. *In re Advent Corp.*, 20 B.R. 561, 562 (Bankr.D.Mass. 1982). The party seeking transfer "... must establish not merely that the existing forum is inconvenient, but that the balance of convenience weighs clearly and substantially in favor of the proposed transfer." *In re Lionel Corp.*, 24 B.R. 141, 143 (Bankr.S.D.N.Y.1982) "Where a transfer would merely shift the inconvenience from one party to the other or where after balancing all the factors, the equities lean but slightly in favor of the movant, the ... choice of forum should not be disturbed." Moore's Federal Practice ¶ 145(5) at 1616, n. 5 (2d ed.1979) quoting *Deluxe Game*

*Corporation v. Wonder Products Co.,* 166 F.Supp. 56, 61 (S.D.N.Y.1958). *See also In re Lionel Corp.,* 24 B.R. 141, 143 (Bankr.S.D.N.Y.1982) (presumption exists that all matters involving a bankruptcy should be tried in the court in which the bankruptcy is pending). *Walbridge, supra,* 51 B.R. at 139.

*See also Lionel, supra,* 24 B.R. at 143. These conclusions are totally consistent with the pronouncements of the Court. *In re Windsor Communications Group, Inc.,* 53 B.R. 293, 296 (Bankr.E.D.Pa.1985) (per KING, B.J.).

The Defendant presented one (1) other authority to us, on October 29, 1986, *In re Birchminster Corp. of California,* 6 B.R. 258 (Bankr.E.D.Pa.1980) (per KING, B.J.). However, a comparison of the facts in *Birchminster* and the other authority cited by the Defendant on its Brief, *Popell, supra,* on one hand with those in *Windsor,* the other cases cited by the Defendant, and this case on the other hand reveals that Judge King's two (2) decisions are, as we might expect, totally consistent with each other and totally consistent with the result of denial of the Defendant's Motion. In *Birchminster,* Judge King transferred the entire bankruptcy case of a debtor, as opposed to a small adversarial proceeding which is a piece of a large case, to the Eastern District of California. This decision was based upon the Court's findings that "of the total creditors, approximately seventy or eighty percent are located in California, with no creditors in Pennsylvania," and that all of the Debtor's employees and both of its offices were located in California. 6 B.R. at 261. The only Pennsylvania contact of the corporation was that it was the home of the single member of the Board of Directors. *Id.*

The *Popell* case is very similar to *Birchminster.* There, the Debtor, as well as the creditors, was Florida-based, being a Florida corporation having its principal place of business in Florida.

On the other hand, in *Windsor,* as in *Walbridge, Lionel,* and here, the moving party seeking a change of venue relied solely upon the fact that it, the moving party, was located in a jurisdiction other than the Court where suit was brought against it, and that it would be inconvenient for the moving party to defend in the jurisdiction where the Debtor was located. Given "[t]he desirability of centering all litigation involving a debtor in the bankruptcy court where the bankruptcy case is pending," *Windsor, supra,* 53 B.R. at 295, and the fact that "the plaintiff's choice of forum should rarely be disturbed," *id.* at 296, it is clear that the Defendant's assertion that it will be inconvenienced by being forced to litigate in a bankruptcy court in approximately equal measure to that which the Debtor would be compelled to experience if it were forced to litigate in the district court where the Defendant is located cannot come close to carrying the day for it.

Clearly, the policy of "centering" the Debtor's litigation in this Court would be totally frustrated if we granted the Defendant's Motion. As the Debtor is an airline, and entered into business transactions around the world, the Court notes that, not surprisingly, many of the Defendants in preference actions instituted by the Trustee in this case are outside of this jurisdiction. It would approach the absurd to require the Trustee to litigate these actions in scores of different jurisdictions, which would be the consequence of our ruling in favor of the Defendant.

 Equally as lacking in merit is the 12(e) Motion of the Defendant. Such a Motion can be sustained only if a Complaint is unintelligible, not merely if it is lacking detail, and such Motions are not favored. *See* 2A J. MOORE FEDERAL PRACTICE, § 12.18[1], at 12–130, 12–141 (2d ed. 1986). Clearly, the Defendant here knew enough about the Plaintiff's claim to prepare an answer to the Complaint. In fact, Mr. Ruehmann (whose office, we note, is located in Cleveland, Ohio, which is hardly closer to Miami than Philadelphia) revealed that he had undertaken considerable investigation of the matter and probably knew considerably more about the underly-

ing circumstances that the Trustee did or could have known when he filed his Complaint. Furthermore, in about five (5) minutes of questioning by the Court on this issue, it became apparent that, although he and his counsel were apparently oblivious to it, a substantial possibility of a defense under 11 U.S.C. § 547(c)(2) appears to exist to the merits of the Plaintiff's claim.

The Defendant's Motion therefore clearly must be denied. Further, during the course of the hearing, the Plaintiff requested permission to amend its Complaint to add CPPSD as a party, which we shall grant in the accompanying Order.

However, we are struck with the irony of the realization that, had defense counsel analyzed the merits of the dispute and addressed them on October 29, 1986, as the Court intended, instead of wasting the time and financial resources of his client and all others involved and the Court with dilatory and frivolous legal maneuvers, this case might have already been resolved in its favor. We therefore remind defense Counsel that he has an obligation to assist the Court in disposition of matters on their merits, and that performance of this duty works to the benefit of all involved in the Court system. We trust that Counsel will perform his duties in this spirit in the future.