**In re APF CO., et al., Debtors.**

**Joseph A. Pardo, Trustee, et al., Plaintiffs,**

**v.**

**Nylcare Health Plans, Inc., Nylcare Health Plans of the Gulf Coast, Inc., and Nylcare Health Plans of the Southwest, Inc., Defendants.**

**Bankruptcy No. 98–1596(PJW).**
**Adversary No. 00–849(PJW).**

United States Bankruptcy Court, D. Delaware.

Dec. 18, 2001.

William P. Bowden, Christopher S. Sontchi, Ashby & Geddes, Wilmington, DE, Zack A. Clement, Fulbright & Jaworski L.L.P., Houston, TX, for Defendants Nylcare Health Plans of Gulf Coast, Inc. and Nylcare Health Plans of the Southwest, Inc.

Kevin S. Anderson, Eric P. Wilenzik, Elliott Reihner Siedzikowski & Egan, P.C., Blue Bell, PA, McCarter & English, Wilmington, DE, for NYLCare Health Plans, Inc.

Frederick L. Cottrell, Mark D. Collins, Christopher D. Loizides, Richards, Layton & Finger, P.A., Wilmington, DE, for the Plan Administrator.

Elio Batista, Jr., The Bayard Firm, Wilmington, DE, Joseph L. Schwartz, Riker, Danzig, Scherer, Hyland & Perretti, Morristown, NJ, for Trustee of the FPA Creditor Trust.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

Before the court is the motion (Doc. # 9) of the defendants Texas Gulf Coast HMO, Inc., formerly NYLCare Health Plans of the Gulf Coast, Inc. ("NYLCare Gulf Coast") and Southwest Texas HMO, Inc., formerly NYLCare Health Plans of the Southwest, Inc. ("NYLCare Southwest") to dismiss all nine counts of the complaint filed by plaintiffs Joseph A. Pardo, Trustee of the FPA Creditor Trust ("Trustee") and the Plan Administrator of APF Co., Inc. ("Plan Administrator", together with the Trustee, the "Plaintiffs") against NYLCare Health Plans, Inc. and its wholly owned subsidiaries, NYLCare Gulf Coast and NYLCare Southwest (collectively, the "Defendants" or "NYLCare"). The motion seeks dismissal pursuant to Fed. R. Civ. Proc. 12(b)(6) for failure to state a cause of action. In a separate motion, NYLCare Health Plans, Inc. ("NHP") joined in NYLCare Southwest and NYLCare Gulf Coast's motion to dismiss the nine counts of the complaint and additionally moved to compel the Plaintiffs to provide a more definite statement of the complaint pursuant to Fed. R. Civ. Proc. 12(e). (Doc. # 8). Plaintiffs allege that NYLCare's pre-petition withholding and post-petition failure to turn over the capitation payments due APF Co.,Inc. f/k/a/ FPA Medical Management, Inc. ("FPA") and its affiliates (collectively "the Debtors") under certain medical services agreements are a sanctionable violation of the automatic stay under 11 U.S.C. § 362 and constitute an avoidable preference under 11 U.S.C. § 547(b) and § 550[1]. Plaintiffs also re-

---

1. Unless otherwise indicated, all references hereinafter to "§ ____" are to a section of the

quest a recovery of an improvement in FPA's insufficiency position under § 553(b), turnover of property of the estate under § 542, and recovery of an unauthorized post-petition transfer under § 549 & § 550. For the reasons discussed below, I will grant NYLCare's motion as to Counts One through Five and Count Eight, but I will deny the motion as to Counts Six, Seven and Nine. I will also deny NHP's motion for a more definite statement.

## BACKGROUND

FPA was a national physician practice management company which acquired, organized and managed primary care physician practices that contracted with health maintenance organizations and health insurance plans. It provided medical care services to capitated managed care enrollees and fee-for-service patients and also provided physician management services to hospital emergency departments, urgent care, radiology and correctional facilities. (Complaint ¶ 9.) FPA Medical Group, P.A., FPA Medical Foundation and FPA Medical Group of Texas, A Texas Professional Association (collectively, the "Medical Groups") were affiliates of FPA. According to Plaintiffs, the Medical Groups provided, through their contracted physicians, medical services to NYLCare's health care enrollees within the state of Texas. (Complaint ¶ 10.)

NHP entered into a certain Multi–Site Services Agreement with FPA effective January 1, 1998 (the "Multi–Site Agreement", together with the Service Agreements, hereinafter referenced, the "Agreements"). (Complaint ¶ 15.) Under the terms of the Multi–Site Agreement, regional contracts were entered into between FPA affiliates and NHP affiliates to govern the provision of services at a local

level. (Complaint ¶ 16.) NYLCare Gulf Coast entered into two site specific provider agreements; one with FPA Medical Group, P.A. and the other with FPA Medical Foundation (collectively, the "Site Specific Agreements"). (Complaint ¶ 16.) Both agreements had an effective date of January 1, 1998. (Complaint ¶ 16.) NYLCare Gulf Coast had previously entered into an agreement for the provision of health care services to NYLCare's Houston enrollees with HP/AHI Medical Group, Houston, P.A. ("HP/AHI") dated December 1, 1996 (the "AHI Agreement", and together with the Site–Specific Agreements, the "Service Agreements"). (Complaint ¶ 17.) HP/AHI was subsequently acquired and merged into one of the Debtors, FPA Medical Group of Texas, A Texas Professional Association. (Complaint ¶ 17.) Under the Service Agreements, the Medical Groups were to provide certain medical services to NYLCare enrollees in exchange for NYLCare's payment of a monthly fee (the "Capitation Payment") to the Medical Groups. (Complaint ¶ 18.)

Essentially, only two of the monthly Capitation Payments due under the Agreements are relevant to this case: the Capitation Payments due in June and July of 1998. Prior to filing bankruptcy, FPA and some of its affiliates fell behind in their payment obligations to doctors and medical care providers (the "Healthcare Providers") who were rendering services to NYLCare's managed care enrollees. (Complaint ¶ 19.) Consequently, NYLCare gave notice that it would be withholding the June 1998 Capitation Payment in order to make payments directly to the Healthcare Providers. (Complaint ¶¶ 22,-23.) NYLCare subsequently withheld the Capitation Payments due in June and July of 1998 (the "Withheld Payments").

Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

(Complaint ¶¶ 22, 23, 24.) Under the terms of the Multi–Site Agreement, NYLCare was obligated to remit Capitation Payments as calculated under the Site–Specific Agreements on the 15th of every month. (Complaint ¶ 21.) Capitation Payments were also due under the AHI Agreement. (Complaint ¶ 21.) While the Complaint does not specify a set monthly date of payments for the AHI Agreement, Plaintiffs plead that the July Capitation Payment of $4,118,875 was due on July 15, 1998 and that Defendants failed to make the July Capitation Payment. (Complaint ¶ 21.); (Pls.' Mem. in Opp'n to Mot. to Dismiss, Doc. # 32 at 5.) According to Plaintiffs, NYLCare withheld both the June Capitation Payment of at least $3,956,706 and the July Capitation Payment of at least $4,118,875. (Complaint ¶¶ 22, 24.)

Each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on various dates during a period from July 19, 1998 through August 7, 1998.[2] (Complaint ¶ 13.) The petitions for FPA and its affiliates, including the three involved in this adversary proceeding[3], were consolidated by order dated July 21, 1998 into one case, *In re APF Co., et al.* Case No. 98–1596 (PJW).

On May 26, 1999, I entered an order confirming the Debtors' Modified Second Amended Joint Plan of Reorganization (the "Plan"). ·(*In re APF, Co., et al.,* Case No. 98–1596(PJW), Doc. # 2100 (Originally Doc. # 2097)). Plaintiffs in this proceeding are the Trustee of the FPA Creditor Trust established by the Plan and the Plan Administrator of the Plan.

Plaintiffs commenced this adversary proceeding on July 18, 2000. They seek declaratory relief, compensatory and punitive damages, and costs and attorneys' fees based on NYLCare's withholding of the Capitation Payments for June and July 1998. Specifically, Counts One, Two and Three allege that NYLCare violated §§ 362(a)(3), (a)(6) and (a)(7) and Count Four alleges that these violations were willful. Count Five requests a declaratory judgment pursuant to § 105 and 28 U.S.C. §§ 2201–2202 that NYLCare has waived all rights to the Withheld Payments by its failure to obtain relief from the automatic stay. Plaintiffs also seek to recover all or portions of the Withheld Payments as an improvement in the insufficiency difference under § 553(b), as an unlawful retention of estate property under § 542, as an unauthorized post-petition transfer under § 549 and as a preferential transfer under § 547 in Counts Six, Seven, Eight and Nine, respectively.

NYLCare moves to dismiss the nine counts of the complaint for failure to state a claim upon which relief may be granted under Fed.R.Civ.P. 12(b)(6)[4]. For each

---

2. According to the court docket, the debtors involved in this action filed for relief on the following dates:

FPA Medical Group, P.A., No. 98–01623(PJW): July 19, 1998
FPA Medical Group of Texas, A Texas Professional Assoc., No. 98–01621(PJW) July 19, 1998
FPA Medical Foundation, No. 98–01791(PJW): August 3, 1998.
FPA Medical Management, Inc., No. 98–01596(PJW): July 19, 1998.

All of the FPA affiliated cases were consolidated under Case No. 98–01596–PJW by an order dated July 21, 1998.

3. The three FPA affiliates involved in this case are:
FPA Medical Group, P.A.,
FPA Medical Group of Texas, A Texas Professional Association, and
FPA Medical Foundation

4. Fed. R. Bank. P. 7012 makes Fed.R.Civ.P. 12(b)(6) applicable to proceedings in bankruptcy.

count, One through Nine, Defendants argue that the Plaintiffs have not adequately plead that the Debtors had an interest or right in the Withheld Payments. In support of this position, NYLCare alleges that FPA was in material breach of the Agreements, that by the terms of the Agreements, FPA had forfeited its right to the Withheld Payments and that NYLCare was authorized by the Agreements to instead make payments directly to Healthcare Providers. Defendants also argue, as to Counts One through Five, that the June and July Capitation Payments were withheld pre-petition and that the post-petition retention of the Withheld Payments was not a violation of the automatic stay. In addition, Defendants assert that Plaintiffs have not adequately plead pre-petition setoff for Count Three, an improvement in the insufficiency difference for Count Six, that the July Capitation Payment was withheld post-petition for Count Eight or a transfer of specific funds that depleted the estate for Count Nine.

In response, Plaintiffs argue that it is NYLCare's withholding of the July Capitation Payment after the petition date, and NYLCare's retention of the Withheld Payments during the pendency of the case that constitutes a violation of the automatic stay and entitles the Plaintiffs to seek turnover of the Withheld Payments under § 542. Plaintiffs also respond that the questions of the existence and effect of breach of contract are mixed questions of law and fact not properly before the court on a Rule 12(b)(6) motion. Additionally, Plaintiffs assert that the defenses put forth by Defendants of recoupment, setoff and contractual rights to redirect payments to Healthcare Providers are issues that are not properly before the court at this time.

The issues for Counts One through Five and Eight therefore are (1) whether the withholding of the July Capitation Pay-

ment occurred after the chapter 11 petition was filed and (2) whether NYLCare's post-petition retention of the June and July Capitation Payments that NYLCare withheld pre-petition under a pre-petition contract constitutes a violation of the automatic stay. The issue of whether Debtors had an interest in the June and July Capitation Payments such that they were debts owing Debtors, property of the estate or an interest of Debtors at the petition date is the key consideration for Counts Six, Seven, and Nine.

## DISCUSSION

### I. Standard of Review under Rule 12(b)(6).

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) serves to test the sufficiency of the complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993); *Loftus v. Southeastern Pennsylvania Transp. Auth.,* 843 F.Supp. 981, 984 (E.D.Pa.1994). When deciding such a motion, I accept as true all allegations in the complaint and all reasonable inferences drawn from it which I consider in a light most favorable to the plaintiffs. *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997); *Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989). I should not grant a Rule 12(b)(6) motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support [its] claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). Rule 12(b)(6) autho-

rizes a court to dismiss a claim based on a dispositive issue of law. *Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989) *citing Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

## A. Counts One, Two, Three, Four and Five

 In Counts One through Three respectively, Plaintiffs allege that Defendants' failure to remit the Withheld Payments to the Medical Groups and Defendants' concurrent failure to timely file for relief from the stay constitutes an exercise of control over property of the estate under § 362(a)(3); that Defendants' continued exercise of control over the Withheld Payments alleged in Count One and its failure to remit the Withheld Payments to the Debtors' estate constitute an act to "collect, assess or recover a claim against the debtor" in violation of § 362(a)(6); and that NYLCare has withheld the June and July Capitation Payments for over one year without seeking an order for relief from the stay in order to setoff against the Withheld Payments in violation of § 362(a)(7).

In response, NYLCare argues that with regard to Counts One and Two, the Medical Groups were not entitled to the Withheld Payments as they were in breach of the Agreements before the payments were due, that the withholding of both the June and July Capitation Payments occurred pre-petition, and that retention of the Withheld Payments during the case was not a violation of the automatic stay, but a preservation of Defendants' litigation position under the contracts. In response to Count Three, Defendants argue that Plaintiffs did not adequately plead that either

the elements of setoff or setoff itself occurred post-petition.

The relevant sections of § 362 forbid the following acts after the filing of the voluntary petition for chapter 11 relief:

(a)(3) **any act** to obtain possession of **property of the estate** or of property from the estate or to exercise control over property of the estate;

\* \* \* \* \* \*

(a)(6) **any act** to collect, **assess, or recover a claim against the debtor** that arose before the commencement of the case under this title;

(a)(7) **the setoff** of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor. 11 U.S.C. §§ 362(a)(3), (a)(6), and (a)(7). (emphasis added)

The Plaintiffs put forward two bases for their assertion that the Defendants have violated the automatic stay. First, Plaintiffs allege that the July Capitation Payment was withheld post-petition. Second, Plaintiffs assert that the Defendants' post-petition retention of the Withheld Payments amounts to a violation of the stay that supports Counts One through Five. Specifically, Plaintiffs allege that (a) the failure to turn over property of the estate amounts to control of estate property (Count One), (b) the continued retention of the Withheld Payments amounts to a collection or assessment of the Debtors' pre-petition debt (Count Two), (c) that the failure to seek relief from stay for two years amounts to a post-petition setoff in violation of the automatic stay (Count Three), (d) these violations were willful (Count Four), and (e) Defendants have waived their claim to the Withheld Payments based on these willful violations of the automatic stay (Count Five).

Based on the facts alleged by Plaintiffs and facts in the record of the case, considered in a light most favorable to the Plaintiffs, I find that the withholding of the July Capitation Payment due on July 15, 1998 occurred before the filing of the petition for relief.[5] The earliest chapter 11 petition filing occurred on July 19, 1998 which was after NYLCare failed to make the July Capitation Payment which was due on July 15, 1998. While Plaintiffs allege that the withholding of the July Capitation Payment occurred after the petition date (Complaint ¶ 26), the dockets for the Debtors involved in this adversary proceeding indicate that the first filing occurred after the payment due date of July 15th, 1998.[6] The court is allowed to consider the docket when deciding a Rule 12(b)(6) motion. *See Collins v. County of Kendall*, 807 F.2d 95, 99–100 (7th Cir.1986) (Court reviewed dockets of state court actions to evaluate plaintiffs' claims in their complaint of bad faith prosecution and harassment.) *See also Cunningham v. Riley*, 98 F.Supp.2d 554, 557 (D.Del.2000) (In deciding a Rule 12(b)(6) motion, the court must primarily consider the allegations in the complaint, but may also take into account matters of public record, orders, and items appearing in the record of the case.); *Beverly Enterprises, Inc. v. Trump*, 182 F.3d 183, 190 n. 3 (3rd Cir.1999) *citing to Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3rd Cir.1993) ("It is well-settled that in deciding a motion to dismiss, courts generally · may consider only the allegations contained in the complaint, exhibits attached thereto, and matters of public record.") Thus, I conclude that the withholding of the July Capitation Payment occurred pre-petition.

As stated in a recent opinion based on similar facts involving FPA, the automatic stay applies by its terms only to affirmative post-petition acts. *See Pardo v. Horizon Healthcare Plan Holding Co., Inc. (In re APF Co. et al.)*, Adv. Proc. No. 00–854(PJW), Memorandum Opinion, Doc. # 7 at *9, 2001 WL 1820788 (Bankr.D.Del. August 31, 2001) Consequently, any pre-petition act of withholding a Capitation Payment cannot of itself violate the automatic stay. *Id.* at *9–10. Based on the allegations contained in the Complaint and for the same reasons outlined in *Horizon*, I find that any act of withholding the June and July Capitation Payments occurred pre-petition and cannot be a violation of § 362(a)(3) or § 362(a)(6).[7] *Id.* at *9–17. Similarly, I find that any alleged setoff of the Withheld Payments occurred pre-petition and therefore cannot be a violation of § 362(a)(7). I also hold that NYLCare's post-petition retention of the Withheld Payments does not amount to a violation of the automatic stay under the circumstances.

A violation of §§ 362(a)(3) and (a)(6) requires both (1) a post-petition act and (2) property of the estate. *Horizon*, Adv. Proc. No. 00–854(PJW), Mem. Op., Doc.

---

5. *See supra* note 2 and accompanying text.

6. *See supra* notes 2 & 3 and accompanying text.

7. The Complaint is unclear as to the monthly payment obligation date under the AHI Agreement. (Complaint ¶ 21, "Payments were also due under the AHI Agreement.") The Plaintiffs' brief seemingly clarifies this issue by stating that the entire July Capitation Payment of $4,118,875, which I read to be inclusive of the payment due under the AHI Agreement based on ¶¶ 21 and 24 of the Complaint, was due on July 15, 1998. ( Pls.' Mem. in Opp'n to Mot. to Dismiss, Doc. # 32 at 5.) Due to the uncertainty of this point, if there are credible facts to support a finding that the obligation date of the July AHI Capitation Payment was post-petition, the Plaintiffs' are given leave to amend the Complaint with regard to the July Capitation Payment due under the AHI Agreement only.

# 7 at *10. Even if the Withheld Payments are property of the estate, which the parties dispute, the Plaintiffs must show that NYLCare engaged in conduct which was an **affirmative post-petition** act manifesting either an exercise of control over property of the estate, or collecting, assessing or recovering such property in order to demonstrate a stay violation. *Id.* at *10; *United States v. Inslaw, Inc.*, 932 F.2d 1467, 1474 (D.C.Cir.1991) ("The statutory language makes clear that the stay applies only to acts taken *after* the petition is filed.").

I find that NYLCare's post-petition conduct in this case was not an affirmative action within the meaning of § 362(a)(3) or (a)(6). Sections (a)(3) and (a)(6) require more than a mere passive act of failing to remit the Withheld Payments. The purpose of the automatic stay is to maintain the status quo that exists at the time of the debtor's bankruptcy filing. *In re Richardson*, ·135 B.R. 256, 258 (Bankr.E.D.Tex.1992). The sanctions of § 362(h) should not be extended to punish creditors who legally seized property of the estate pre-petition and fail to return this property immediately to the debtor post-petition. *Richardson*, 135 B.R. at 259. Absent any affirmative post-petition act regarding the property, these creditors are in effect complying with the spirit of the § 362 freeze by maintaining the seized property in the status it enjoyed pre-petition. *Id.* Here, Plaintiffs have not demonstrated any act by NYLCare that occurred post-petition to alter the petition date status of the Withheld Payments.

Plaintiffs' position that NYLCare was required to turnover the disputed funds which it withheld pre-petition immediately upon the filing of the petition or face sanction under § 362, undermines the function of § 542. Taken to its logical conclusion, Plaintiffs' argument leads to the untenable result that the only appropriate non-sanctionable course of action for a creditor in possession of funds of the debtor, which were withheld pre-petition, is to turn over the funds to the estate immediately upon filing, thereby waiving the right to assert defenses it may have to a § 542(b) action. *Horizon*, Adv. Proc. No. 00–854(PJW), Mem.Op., Doc. # 7 at *11; *Inslaw*, 932 F.2d at 1473 ("[F]ulfillment of [the] purpose [of § 362] cannot require that every party who acts in resistance to the debtor's view of its rights violates § 362(a) if found in error by the bankruptcy court.") Even if it is later decided that the Withheld Payments are property of the estate and subject to turnover under § 542, there is no affirmative post-petition act to merit § 362 sanctions merely because NYLCare, after withholding the payments pre-petition pursuant to a contract dispute, retained the funds post-petition until such time as the ownership rights were determined. *Inslaw*, 932 F.2d at 1473 ("[I]t is difficult to believe that Congress intended a violation whenever someone already in possession of property [at the time of filing] mistakenly refuses to capitulate to a bankrupt's assertion of rights in that property.")

I am not persuaded by Plaintiffs' arguments that NYLCare's retention of the Withheld Payments amounts to a violation of the automatic stay because it is a continuing breach of an executory contract. Even if the Withheld Payments or the right to those payments are determined to be property of the estate, the alleged act of breach, the withholding of the June and July Capitation Payments, occurred prepetition. The continued retention of the Withheld Payments without more is not a post-petition act. Nor is breach of contract by itself a violation of the stay. *Horizon*, Adv. Proc. No. 00–854(PJW), Mem. Op., Doc. # 7 at *13–14; *see also* 1 David

G. Epstein et al., *Bankruptcy*, § 3.14 at 174 (West, 1992) ("Nothing is lost by failing to stay breach of contract. The cause of action for the breach belongs to the estate. It can remedy the wrong by any appropriate means as in any other action for breach of contract, including the recovery of compensatory, consequential and other damages or an order for specific performance.").

NYLCare's pre-petition act of withholding the June and July Capitation Payments does not violate §§ 362(a)(3), (a)(6) or (a)(7). It follows that NYLCare also did not run afoul of § 362(h) (Count Four) nor can its conduct be deemed a waiver of rights based on a failure to seek relief from automatic stay (Count Five).

## B. Count Eight:

In Count Eight, Plaintiffs seek to avoid and recover the withheld July Capitation Payment as an unauthorized post-petition transfer under § 549. In relevant part, § 549 reads:

(a) except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

 (1) **that occurs after the commencement of the case;** and

 (2) (A) that is authorized only under section 303(f) or 542(c) of this title; or

 (B) that is not authorized under this title or by the court.

11 U.S.C. § 549 (emphasis added)

■ In order to meet the required elements of a § 549 transaction, a plaintiff must prove (1) that property of the estate (2) was transferred (3) after the filing of a petition and that such transfer (4) was not authorized by the Code or the Court. 11

U.S.C. § 549(a); *e.g., Pardo v. Pacificare of Texas, Inc., et al. (In re APF Co.),* 264 B.R. 344, 359–60 (Bankr.D.Del.2001) (listing elements); *Gibson v. United States (In re Russell),* 927 F.2d 413, 417–18 (8th Cir. 1991) (applying elements); *Moratzka v. Visa U.S.A. (In re Calstar, Inc.),* 159 B.R. 247, 252 (Bankr.D.Minn.1993).

■ In this case, the withholding of the July Capitation Payment occurred on July 15, 1998 which was before the first petition filing date of July 19, 1998. As discussed above in section I.A. of this opinion, I find that the July Capitation Payment was withheld prior to the petition date[8]. Therefore, as a matter of law, there could be no unauthorized post-petition transfer. Dismissal is appropriate for Count Eight.

## C. Counts Six, Seven and Nine:

Defendants seek dismissal of Counts Six, Seven and Nine of the Complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6). Count Six seeks the recovery of an improvement in an insufficiency under § 553(b) which Plaintiffs assert was caused by a pre-petition setoff of the June Capitation Payment (the "Insufficiency Difference"). Count Seven is an action for turnover of the June and July Capitation Payments and the Insufficiency Difference as property of the estate under § 542(b). Count Nine seeks the avoidance and recovery of pre-petition transfers of the June and July Capitation Payments as preferences under § 547.

■ At the core of Defendants' Motion to Dismiss Counts Six, Seven and Nine is the assertion that Plaintiffs have failed to plead a right to the Withheld Payments. Defendants allege that the Medical Groups were in substantial default of the Agreements due to their failure to make pay-

---

8. *See supra* note 7.

ments to the Healthcare Providers, that this substantial default terminated the Medical Groups' property interest in the June and July Capitation Payments under the Agreements and that the terms of the Agreements gave NYLCare the contractual right to redirect Capitation Payments to the Healthcare Providers in the event of such substantial default. (Brief in Supp. of Mot. to Dismiss, Doc. # 10 at 6.) Additionally, Defendants assert that Plaintiffs have admitted this "substantial default" in the Complaint at paragraph 19. *Id.* Since, in Defendants' view, the default terminated the Medical Groups' contractual right to payment of the Withheld Payments, Defendants further assert that there is neither an "interest of a debtor in property" to be the subject of a preferential prepetition transfer under § 547 in Count Nine, nor a "debt owing to the debtor" to support the setoff required to establish the Insufficiency Difference under § 553(b) in Count Six. Additionally, Defendants argue that since the Medical Groups' right to payment was terminated prior to the petition date, the "property of the estate" required by § 542 in Count Seven was never created at the filing of the chapter 11 petition. All of these arguments for dismissal revolve around the pre-petition Agreements between the Debtors and NYLCare, the determination of default under those Agreements, and the effect of default on both the Medical Groups' right to payment and Defendants' right to withhold or redirect the June and July Capitation Payments.

█ I recently held in two related adversary proceedings that the complexity of the contractual relationships at issue and the absence of any evidence either by way of affidavit or authenticated copies of the relevant contracts, precludes a determination under Rule 12(b)(6) that the Withheld Payments are, or are not, property of

Debtors' estate. *See Pacificare,* 264 B.R. at 356; *Horizon,* Adv. Proc. No. 00–854(PJW), Mem. Op., Doc. # 7, at *17 (Bankr.D.Del. Aug. 31, 2001). The determination of whether the Withheld Payments fall within the scope of an "interest of a debtor in property" under § 547 or "debt owing to the debtor" under § 553(b) is likewise not susceptible to determination under a Rule 12(b)(6) motion for the same reasons. Even if, as NYLCare asserts, Plaintiffs admitted default in their pleadings, the effect of that default on their payment rights is still a mixed matter of law and contested facts. NYLCare's argument that the these issues may be determined from the face of the Agreements which were provided as Exhibits A, B, C and D (Doc. # 40) to the Defendant NYLCare's Reply In Support of Motion To Dismiss (Doc. # 41) is not compelling for two reasons. First, although Plaintiffs reference the Agreements in their claim, the contracts must be "undisputedly authentic documents" to be considered by the court when offered by the defense. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3rd Cir. 1993) ("We now hold that a court may consider an **undisputedly authentic document** that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") (emphasis added). When the court considers documents submitted by the defense which were not attached to the complaint, conversion to a summary judgment is required to give the plaintiff notice and an opportunity to respond. *Pension,* 998 F.2d at 1196; *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("[T]he problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff. . .."). The copies of contracts provided in the Exhibits to the Defendant NYLCare's Reply In Support of Motion To

Dismiss (Doc. # 40) are offered by Defendants and not authenticated in any manner. Indeed, the copies of the Agreements are not even signed. While Plaintiffs have referred to the Agreements in their pleadings, they have not had an opportunity to authenticate the copies offered by NYLCare. The Court cannot consider these extraneous documents offered by the Defendants without converting the motion to one for summary judgment in order to give Plaintiffs an opportunity to respond. *Pension,* 998 F.2d at 1196.

■ Second, even if the contracts were "undisputedly authentic", there remain disputed issues of fact that are necessary to determine the effects of default on the Medical Groups' right to the June and July Capitation Payments and whether Defendants fulfilled all of the contractual duties which were required before their right to withhold Capitation Payments arose under the Agreements. Consequently, Plaintiffs are entitled to submit evidence to establish their rights to the Withheld Payments in order to support their claims under Counts Six, Seven and Nine. *Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686 ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test [for dismissal under Rule 12(b)(6)]"). Dismissal under Rule 12(b)(6) is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [the plaintiff] to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 102.

The question remaining before the Court on Counts Six, Seven, and Nine is whether there is any valid basis for dismissal other than those related to the contractual matters discussed above. Each of these counts is discussed below in sections one, two and three, respectively. I hold that Counts Six, Seven and Nine meet the pleading requirements and that the Defendants' motion to dismiss these counts under Rule 12(b)(6) must be denied.

*1. Count Six: Recovery of Insufficiency Difference under § 553(b).*

■ Defendants move to dismiss Count Six of the Complaint which, pursuant to § 553(b), seeks avoidance and recovery of an improvement in NYLCare's insufficiency position effected by an alleged pre-petition setoff. In addition to denying that the Medical Groups had any right to the Withheld Payments, Defendants make two other arguments: (1) asserted factual deficiencies in the pleadings and (2) potential defenses based on the merits of the claim. Neither of these veins of argument merit dismissal under Rule 12(b)(6).

First, NYLCare asserts that the Complaint suffers from the following factual deficiencies:(1) Plaintiffs fail to plead the facts necessary to support the elements required to prove an exercise of a setoff (Brief in Supp. of Mot. to Dismiss, Doc. # 10 at 14) and (2)Plaintiffs fail to meet the pleading requirements of § 553(b) because there is no reference to the amount of the insufficiency on the 90th day before filing or the first date after the 90th day before filing on which there was a deficiency (Def. NHP's Reply Brief, Doc. # 37 at 17–18). The Federal Rules do not require that a complaint set out in detail the facts upon which the claim is based. *Conley,* 355 U.S. at 47, 78 S.Ct. at 103. Plaintiffs need only provide NYLCare with fair notice of the nature and grounds of the claims asserted. *Id.* I find that Count Six of the Complaint meets this standard.

■ Second, NYLCare argues two basis for dismissal which are based on the merits, rather than the sufficiency of the

claim. NYLCare asserts that the claim is deficient because (1) the facts alleged by Plaintiffs suggest a recoupment rather than a setoff (Brief in Supp. of Mot. to Dismiss, Doc. # 10 at 14) and (2) Plaintiffs have not stated a claim under § 553(b) because the payments made to the Healthcare Providers by NYLCare exceeded the amount of the withheld June Capitation Payment. (*Id.* at 13–14.) These arguments go to the merits, not the sufficiency of Count Six of the Complaint. Just as in the case of determining whether the Withheld Payments are property of the estate, the determination of whether there were rights to setoff or recoupment and whether or when setoff or recoupment occurred are mixed questions of law and contested facts that are not properly before the court for decision on a Rule 12(b)(6) motion. Defendants' implication that there was no improvement in their insufficiency amount under the terms of § 553(b) by alleging that their payments to the Healthcare Providers exceeded the amount of the withheld June Capitation Payment is similarly flawed. The test for dismissal is not remoteness of the likelihood of recovery, *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686, but rather dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. at 102. The issues raised here by Defendants are potential defenses based on disputed allegations and as such do not raise a conclusive barrier to Plaintiffs' case in the context of a Rule 12(b)(6) motion.

■ NYLCare's contractual rights to setoff, if any, are limited in bankruptcy by § 553. "[S]ection 553(a) recognizes and preserves rights of set off where four conditions exist:(1) the creditor holds a 'claim' against the debtor that arose before the commencement of the case; (2) the credi-

tor owes a 'debt' to the debtor that also arose before the commencement of the case; (3) the claim and the debt are 'mutual'; and (4) the claim and the debt are each valid and enforceable." *St. Francis Physician Network, Inc., v. Rush Prudential HMO, Inc. (In re St. Francis Physician Network, Inc.)*, 213 B.R. 710, 715 (Bankr. N.D.Ill.1997) *quoting* Lawrence P. King, et al., 5 *Collier on Bankruptcy*, ¶ 553.01 (15th Ed. Rev.); *Pacificare*, 264 B.R. at 354.

Specifically, § 553(b) states:

(b)(1) ... if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—

(A) 90 days before the date of the filing of the petition; and

(B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

(2) In this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.

11 U.S.C. § 553(b).

Plaintiffs plead that to the extent that NYLCare had a right to setoff, Plaintiffs may avoid and recover under § 553(b) any improvement that Defendants realized in their insufficiency position (as defined by § 553(b)(2)) as a result of the pre-petition setoff of the June Capitation Payment which occurred within the 90 days prior to filing of the petition. Plaintiffs allege the following facts in support of their § 553(b) claim: Defendants were obligated to pay Capitation Payments under the Agreements. (Complaint ¶ 21.) On or within 90 days before the petition for relief was filed,

an insufficiency of at least $8,595,761 existed with respect to NYLCare. (Complaint ¶ 64.) Defendants did not pay the June Capitation Payment when it was due on June 15, 1998. (Complaint ¶¶ 21–23.) Defendants instead paid Healthcare Providers directly. (Complaint ¶¶ 22–24.) NYLCare setoff the June Capitation Payment. (Complaint ¶¶ 65, 66.) As a result of the setoff, NYLCare's insufficiency was reduced to no more than $4,639,055. (Complaint ¶ 65.) NYLCare's insufficiency position was reduced by at least $3,956,706 from the pre-setoff insufficiency amount. (Complaint ¶ 66.) The Medical Groups filed for chapter 11 relief on a series of dates from July 19,1998 through August 7, 1998 [9]. (Complaint ¶ 13.)

Only a pre-petition setoff can be recovered under § 553(b), and Plaintiffs plead that such a setoff occurred. Dismissal under Rule 12(b)(6) is only appropriate if there is no set of facts which a plaintiff could prove that would support the claim asserted. *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 102. Although Plaintiffs plead a post-petition setoff in Count Three, Plaintiffs are not precluded from pleading alternate and inconsistent theories of relief in the same complaint. Fed. R. Civ. Pro. 8(a)(3). The allegations, as plead by Plaintiffs, establish a colorable claim under § 553(b) and dismissal is not appropriate. *Kozakiewicz,* 1 F.3d at 183; *Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686 ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."); *Pacificare,* 264 B.R. at 355. Defendants' motion to dismiss Count Six must be denied.

*2. Count Seven: Turnover of Estate Property Under § 542.*

█ Defendants move for dismissal of Count Seven which seeks turnover of es-

tate property in the form of the Withheld Payments and the Insufficiency Difference alleged under § 553(b) in Count Six. Plaintiffs plead that the Withheld Payments and the Insufficiency Difference are property that the Debtors may use under § 363. Property that a debtor may use in the ordinary course under § 363 is property of the estate.

The only basis which Defendants offer for dismissal is the argument that the Medical Groups' default terminated all rights to payments such that the Withheld Payments did not become property of the estate and thus are not subject to a § 542 turnover order. Defendants also argue that the default gave them the contractual right to redirect payments to the Healthcare Providers. As discussed above in section I.C. of this opinion, a determination of these matters is not properly before this court on a Rule 12(b)(6) motion.

Section 542 provides in relevant part:

(b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

11 U.S.C. § 542(b).

Plaintiffs contend that the June and July Capitation Payments were due and payable to the Medical Groups on June 15, 1998 and July 15, 1998 and that the payments were withheld on those dates. (Complaint ¶¶ 21–24.); (Pls.' Mem in Opp'n to Mot. to Dismiss, Doc. # 32 at 5.) Plaintiffs alleged in Count Six that the June

---

**9.** *See supra* note 2.

Capitation Payment was offset and that there was a recoverable Insufficiency Difference under § 553(b). (Complaint ¶ 64–66.) Plaintiffs assert that NYLCare is in custody or control of the Withheld Payments and the Insufficiency Difference and that NYLCare has not accounted for or delivered the Insufficiency Difference. (Complaint ¶¶ 68–70.) Plaintiffs further plead that the Withheld Payments and the Insufficiency Difference constitute a debt that is property of the estate, that is matured, payable on demand, or payable on order and that these funds are not eligible for offset under § 553. (Complaint ¶ 71.)

These allegations serve to put the Defendants on fair notice of the nature of the claims asserted. *Conley,* 355 U.S. at 47, 78 S.Ct. at 103; *Schaedler,* 370 F.2d at 798. The Plaintiffs are entitled to offer evidence to support their claims[10]. *Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686. Defendants' motion to dismiss Count Seven must be denied.

### 3. Count 9: Avoidance of Preference Transfer under § 547.

▮ Count Nine seeks the avoidance under § 547(b) and recovery under § 550 of the Withheld Payments and two checks from FPA to NYLCare as preferences under § 547. NYLCare only seeks dismissal of Count Nine as to the Withheld Payments and that is the issue which shall be addressed here.[11] The only arguments which NYLCare offers apart from the assertion that the FPA had no contractual right to the Withheld Payments are that

(1) the Debtor failed to identify the specific funds that were transferred to the Healthcare Providers (Brief in Supp. of Mot. to Dismiss, Doc. # 10 at 18), (2) that the transfers did not deplete the estate (*Id.* at 19), (3) that the funds were earmarked for the Healthcare Providers (*Id.*), (4) that the funds transferred to Healthcare Providers constituted "new value" (Mot. to Dismiss, Doc. # 9 ¶ 15) and (5) that relief is not available under § 547 since the Plaintiffs have not alleged an improper set-off under § 553(b) (Def. NHP's Reply Brief, Doc. # 37 at 19). The non-depletion, earmarking and new value arguments each go to the merits of the complaint, not its sufficiency, and thus do not form a basis for dismissal under Rule 12(b)(6). Plaintiffs need not plead that there was an improper setoff of the June Capitation Payment in order to seek the avoidance under § 547 of a preference involving that payment. Although Plaintiffs did plead that a prepetition setoff of the June Capitation Payment occurred for purposes of a § 553(b) action to recover the Insufficiency Difference in Count Six, they are not precluded from pleading an alternate or even contradictory theory of relief in the same complaint. Fed. R. Civ. Pro. 8(a)(3). While the Plaintiffs have not identified the specific funds that were redirected to the Healthcare Providers, the Plaintiffs have identified the Withheld Payments as the Debtors' funds which were held by the Defendants and from which the Defendants allegedly made the preferential pay-

---

10. It should be noted that the Plaintiffs cannot recover all three of the withheld June Capitation Payment, the withheld July Capitation Payment and the Insufficiency Difference. However, the Plaintiffs may be able to prove facts sufficient to recover some combination of these, such as:(1) the June and July Capitation Payments, if there is no valid prepetition setoff of the June Capitation Payment; or (2) the § 553(b) Insufficiency Differ-

ence and the July Capitation Payment if a valid pre-petition setoff of the June Capitation Payment occurred.

11. The two checks were in the amounts of $140,618.48 paid by Debtors to NYLCare Southwest by check dated May 12, 1998 and $75,3000 paid by Debtors to NHP by check dated June 1, 1998. (Complaint ¶ 78.)

ments to the Healthcare Providers.[12] By identifying the Withheld Payments as the source of the preferential transfers, the dates of the withholdings, the Healthcare Providers as the recipients, and the Defendants as the creditors benefitted by the payments, Plaintiffs have provided more than a mere recitation of the statutory language. Since the Debtors were not the entities which transferred the funds, it is unlikely that the Plaintiffs have any means of obtaining more detailed information regarding specific alleged payments without the benefit of discovery. All the Federal Rules require is a " 'short plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " *Conley*, 355 U.S. at 47, 78 S.Ct. at 103. The Plaintiffs have met this burden by identifying the Withheld Payments as the source and maximum value of the alleged preferential payments, the Defendants as the transferors and beneficiaries of the payments, and finally, the Healthcare Providers as the recipients of the payments. Under the particular circumstances presented in this case, Plaintiffs need not identify the specific amounts of the Withheld Payments that were transferred to the Healthcare Providers at this juncture to meet their burden and therefore, dis-

missal under Rule 12(b)(6) is inappropriate.

To meet the requirements of § 547, Plaintiffs must establish that:

(1) an interest of the debtor in property was transferred;

(2) the transfer was made to or for the benefit of the creditor;

(3) the transfer was for or on account of an antecedent debt owed by the debtor before the transfer was made;

(4) the debtor was insolvent at the time of the transfer;

(5) the transfer occurred on or within ninety days before the bankruptcy petition was filed; and

(6) the transfer permitted the creditor to receive more than it would have received upon liquidation of the debtor under the Bankruptcy Code.

*See* 11 U.S.C. § 547(b); *Glenshaw Glass Co. v. Ontario Grape Growers Mktg. Bd. (In re Keystone Foods, Inc.)*, 145 B.R. 502, 508 (Bankr.W.D.Pa.1992)(listing elements); *Pacificare*, 264 B.R. at 357.

Plaintiffs plead that the NYLCare was obligated to pay the Medical Groups a $3,956,706 Capitation Payment on June 15, 1998 and a $4,118,875 Capitation Payment on July 15, 1998 under the terms of the

---

**12.** It is not clear in this case that the Plaintiffs would have access to any specific information as to the details of the preferential transfers without the benefit of discovery. In preference actions where the debtor was the party who made the preferential payments, the plaintiff, whether a trustee, plan administrator or debtor in possession, is presumed to have access to the debtor's records and thus the ability and the burden to identify, with some specificity, the rudimentary facts surrounding the transfers (e.g., the date, time and amount of the allegedly preferential payments, to whom made, the respective values, etc.).

However, in this case, it was not the Debtors who made the transfers but rather it is the

Defendants who are alleged to have diverted the Withheld Payments, purportedly payable to the Debtors under the Agreements, to other creditors of the Debtors. The Defendants and Healthcare Providers are separate legal entities from the Debtors and their records are not within the Debtors' or Plaintiffs' control. In this case, it is difficult to envision how the Plaintiffs could obtain any specific information regarding the preferential transfers prior to accessing the Defendants' records through discovery. Thus, under the particular factual pattern presented in this case, Plaintiffs may plead with less specificity than is required in the usual preferential transfer case to survive a Rule 12(b)(6) motion.

Agreements. (Complaint ¶¶ 21, 22, 24.) Plaintiffs further plead that NYLCare's redirection of $8 million in withheld Capitation Payments owed to the Debtors constitutes transfers to or for the benefit of NYLCare, a creditor of FPA, for an antecedent debt, while the Debtors were insolvent, within 90 days pre-petition and that as a result of this transfer, NYLCare received more than it would have had the Debtor been liquidated under a Chapter 7 plan. (Complaint ¶¶ 78, 79.)

These allegations are sufficient to withstand a Rule 12(b)(6) motion. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support [its] claims." *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686. The existence of possible defenses does not render the pleading subject to dismissal at this stage of the case.

## II. Motion for More Definite Statement under Rule 12(e).

NHP moves for a more definite statement of Counts One through Nine of the Complaint. NHP alleges that it has not been provided with sufficient factual information to frame a responsive pleading.

■■■ Motions for more definite statement are not favored. *Begier v. Cleveland Pneumatic (In re American Intern. Airways, Inc.)*, 66 B.R. 642, 645 (Bankr.E.D.Pa.1986). While Rule 12(b)(6) addresses the legal sufficiency of the pleading, Rule 12(e) allows a defendant to request clarification of an ambiguous pleading so that it can prepare a meaningful response. *See Sisk v. Texas Parks & Wildlife Dep't.*, 644 F.2d 1056, 1059 (5th Cir.1981) The class of pleadings which are so ambiguous as to merit the granting of a

Rule 12(e) motion is quite small. *Sun Co., Inc. (R & M) v. Badger Design & Constructors, Inc.*, 939 F.Supp. 365, 374 (E.D.Pa.1996). Rule 12(e) authorizes a motion for a more definite statement only in the rare case that the complaint is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." *Schaedler*, 370 F.2d at 797. A complaint need only contain " 'a short and plain statement of the claim showing that the pleader is entitled to relief, and . . . a demand for judgment for the relief to which he deems himself entitled.' (Rule 8(a)(2) and (3))." *Id.* at 798. The complaint need not state facts sufficient to constitute a cause of action. *Id.* The pleadings are not a substitution for discovery. *Betancourt v. Marine Cargo Mgmt., Inc.*, 930 F.Supp. 606, 608 (S.D.Fla. 1996). Thus, the basis for granting a motion for more definite statement is unintelligibility of the complaint, not lack of detail. *See American Intern. Airways*, 66 B.R. at 645.

■■■ NHP asserts that the Complaint lacks sufficient detail to allow NHP to reasonably formulate its response. (NHP's Mot. for More Definite Statement, Doc. # 8 ¶ 5.) Specifically, NHP asserts that Plaintiffs' grouping of the three Defendants [13] into the terms "Defendants" or "NYLCare" and the grouping of the three debtor entities [14] into general terms such as "Medical Groups" does not allow NHP to determine from the Complaint "which party did what, which party failed to do what and which parties' rights were adversely affected as a result of such actions or inactions." (NHP's Mot. For More Definite Statement, Doc. # 8 ¶¶ 6–9.) NHP also pleads that it cannot decipher from

---

13. NHP, NYLCare Southwest, and NYLCare Gulf Coast.

14. FPA Medical Group, P.A., FPA Medical Group of Texas, A Texas Professional Association and FPA Medical Foundation.

the Complaint "what it is accused of doing and to whom it is accused of doing it." (NHP's Motion For More Definite Statement, Doc. # 8 ¶ 10.)

I find that the Complaint is not ambiguous and deny NHP's motion for a more definite statement. As detailed above, the Complaint provides fair notice of the nature and basis of each claim asserted and a general indication of the type of litigation involved. The Complaint is sufficiently detailed to allow NHP to reasonably formulate a response. Specifically, the Complaint identifies the four contracts under which the claims to the Withheld Payments arise (Complaint ¶¶ 15–17), the parties to each contract *Id.*, the dates of the contracts *Id.*, the specific Capitation Payments which Plaintiffs seek to recover for the estate (Complaint ¶¶ 22, 24, 66, 68, 69, 76, 80), the amounts of the Withheld Payments (Complaint ¶¶ 22,24), and the dates when the Withheld Payments were due (Complaint ¶¶ 21, 22, 24). NHP's argument that the terms used by Plaintiffs to identify the parties creates an ambiguity such that NHP cannot frame a responsive pleading is not persuasive. The pleadings are sufficiently detailed that NHP, although included in a group designation, should be able to admit or deny its own involvement with any of the counts or actions asserted. This is all that the notice pleading rules require. Additionally, NHP was a party to the Multi–Site Agreement which governed the terms and required the formation of the Site Specific Agreements. (Complaint ¶¶ 15–17.) As such NHP is in a position to know enough about its responsibilities under the contracts and the actions it took or failed to take pre- and post-petition with regard to the Capitation Payments in question to form a response and make any necessary cross or counterclaims. It seems that the deficiencies which NHP complains of, that Plaintiffs have not told NHP what NHP is specifically responsible for or what NHP has individually done or failed to do, are factual issues for discovery.

A complaint need only contain " 'a short and plain statement of the claim showing that the pleader is entitled to relief, and . . . a demand for judgment for the relief to which he deems himself entitled.' (Rule 8(a)(2) and (3))." *Schaedler,* 370 F.2d at 798; *Pacificare,* 264 B.R. at 360. In this case, Plaintiffs have sufficiently identified the Defendants and the Withheld Payments by citing with specificity the contracts, the parties to the contracts, the specific payments at issue and the relief sought. However, the interplay between the three Defendants and which ones took which actions related to the withholding of the June and July Capitation Payments, the redirection of Withheld Payments, and the continued retention of the Withheld Payments are matters which can be determined through discovery. NHP's Motion for a More Definite Statement (Doc. # 8) must be denied.

### CONCLUSION

For the reasons set forth above, I grant NYLCare's motion to dismiss for failure to state a claim upon which relief can be granted as to Counts One, Two, Three, Four, Five, and Eight and I deny their motion as to Counts Six, Seven and Nine. I also deny NHP's motion for a more definite statement.

### ORDER

For the reasons set forth in the Court's Memorandum Opinion of this date, the motion (Doc. # 9) of defendants Texas Gulf Coast HMO, Inc., formerly NYLCare Health Plans of the Gulf Coast, Inc. and Southwest Texas HMO, Inc., formerly NYLCare Health Plans of the Southwest, Inc., and joined by NYLCare Health

Plans, Inc. to dismiss all counts of the Complaint is **GRANTED** as to Counts One, Two, Three, Four, Five and Eight and is **DENIED** as to Counts Six, Seven and Nine. For the reasons set forth in the Court's Memorandum Opinion of this date, NYLCare Health Plans, Inc.'s motion for a more definite statement (Doc. # 8) as to all counts of the Complaint is **DENIED**.